GERALD L. SAUER, State Bar No. 113564
    gsauer@swattys.com
AMIR A. TORKAMANI, State Bar No. 260009
    atorkamani@swattys.com
SAUER AND WAGNER LLP
1801 Century Park East, Suite 1150
Los Angeles, CA 90067
Tel: 310-712-8100
Fax: 310-712-8108

DAVID R. BURTT, State Bar No. 201220
    dburtt@mobilitylegal.com
MOBILITY LEGAL P.C.
317 Washington St. #207
Oakland, CA 94607
Telephone: (510) 208-1909

Attorneys for Defendants
CHARTER ASSET MANAGEMENT FUND, LP.,
CHARTER ASSET MANAGEMENT FUND GP LLC,
CHARTER ASSET MANAGEMENT, LLC, PAUL IM,
and DAVID PARK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARTER SCHOOL CAPITAL, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER ASSET MANAGEMENT FUND, LP. *et al.*,<br><br>Defendants. | Case No. 2:14-cv-03385-GW-PLA<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT SUBMITTED BY DEFENDANTS PAUL IM AND DAVID PARK**<br><br>Hearing Date: July 31, 2017<br>Time: 8:30 a.m.<br>Dept.: 9D |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Monday, July 31, 2017, at 8:30 a.m., or as soon thereafter as the matter may be heard, Defendants Paul Im and David Park (collectively, the "Individual Defendants") will move, and hereby move, for an Order entering summary judgment in their favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on September 20, 2016 and March 16, 2017.

The Individual Defendants base this motion on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, Declaration of Gerald L. Sauer, and Proposed Statement of Uncontroverted Facts and Conclusions of Law, the pleadings, papers, and other documents on file in this action, all matters of which the Court may take judicial notice, along with any evidence and argument presented at the hearing on this matter.

DATED: May 22, 2017

**SAUER AND WAGNER LLP**

By: _____ */s/ Gerald L. Sauer* _____
    Gerald L. Sauer
Attorneys for Defendants
CHARTER ASSET MANAGEMENT, LLC,
CHARTER ASSET MANAGEMENT FUND,
LP., CHARTER ASSET MANAGEMENT
FUND GP LLC, PAUL IM, and DAVID
PARK

<u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.    INTRODUCTION. ...........................................................................................1

II.   STATEMENT OF RELEVANT FACTS ......................................................2

III.  STANDARD OF MOTION FOR SUMMARY JUDGMENT. .....................4

IV.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO
SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE
SUPPORTING A CLAIM FOR DAMAGES AGAINST THEM. ................6

    A.   CSC Is Required To Produce Evidence Establishing The
Individual Defendants Earned Profits Attributable To The Alleged
Infringement In Order To Recover Damages From Them. .................6

    B.   There Is No Evidence That The Individual Defendants Received
Any Profits Attributable To The Alleged Infringement, And
Therefore CSC Cannot Establish Damages Against The
Individual Defendants. ..........................................................................7

         1.   An Award Of Damages Against The Individual Defendants
For Post-May 2014 Profits Will Result In Reversible Error. .....8

         2.   CSC's Prior Attempts To Identify Evidence Of Damages
Against The Individual Defendants Have All Failed. ..............11

             a.   CSC's Prior Attempts To Rely On K-1s Fails To
Support An Award Of Damages Against The
Individual Defendants. ...................................................11

             b.   CSC's Prior Attempts To Rely On The "Investment
Income" Category Fails To Support An Award Of
Damages Against The Individual Defendants. ...............12

             c.   CSC's Prior Attempts To Rely On The "Management
Fees" And "Incentive Income" Categories Fails To

Support An Award Of Damages Against The
Individual Defendants. ...................................................13
    d.    CSC's Prior Attempts To Rely On The "Carried
Interest" Category Fails To Support An Award Of
Damages Against The Individual Defendants................14
V.    CONCLUSION ...............................................................16

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................. 5

*Corber v. Xanodyne Pharmaceuticals, Inc.,*
    771 F.3d 1218 (9th Cir. 2014) .................................................. 8

*Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,*
    772 F.2d 505 (9th Cir.1985) ................................................. 5, 7

*Frow v. De La Vega,*
    82 U.S. 552 (1872) ................................................................. 9

*Mackie v. Rieser,*
    296 F.3d 909 (9th Cir. 2002) ................................................ 5, 7

*Polar Bear Prods., Inc. v. Timex Corp.,*
    384 F.3d 700 (9th Cir. 2004) .................................................. 7

*Robi v. Five Platters, Inc.,*
    838 F.2d 318 (9th Cir. 1988) .................................................. 8

**Statutes**

17 U.S.C. §504 ............................................................................ 5, 6

28 U.S.C. §1332 .......................................................................... 9

**Other Authorities**

4 Nimmer on Copyright §14.03 ................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION.

Defendants Paul Im ("Im") and David Park ("Park") (collectively, the "Individual Defendants") are entitled to summary judgment as to Charter School Capital, Inc.'s ("CSC") sole claim for copyright infringement because there is no evidence supporting a claim for damages against the Individual Defendants. Indeed, CSC has already twice failed, in opposition to the Individual Defendants' Motion for New Trial and in its recent Offer of Proof, to produce any evidence supporting a claim of damages against the Individual Defendants.  It is time for this Court to finally put this issue to rest and enter judgment in favor of the Individual Defendants.

As this Court is aware, the trial in this matter resulted in a verdict in the amount of $1,174,642 against Charter Asset Management Fund, L.P. ("CAM Fund") and Charter Asset Management Fund GP LLC ("CAM GP") (collectively, the "CAM Entities"), and an additional $550,000 against the Individual Defendants. The Individual Defendants moved for a new trial because damages awarded in connection with a copyright claim must tie to profits causally linked to the alleged infringement and received by the defendants.  In this case, there was no evidence of *any* profits received by the Individual Defendants, let alone profits causally linked to the alleged infringement, and therefore the damages award against the Individual Defendants was excessive as a matter of law.  CSC attempted, but failed, to identify evidence supporting the damages award against the Individual Defendants, and hence a new trial was ordered.  The Court then ordered CSC to submit an Offer of Proof to illustrate what evidence, if any, it intended to introduce at a new trial to support a damages claim against the Individual Defendants.  Once again, CSC failed to produce any evidence.

The Individual Defendants are now entitled to summary judgment in their favor because there is no evidence that can support a damages award against them

1

in this matter.  CSC has not been able to identify a scintilla of evidence establishing that the Individual Defendants received profits causally linked to the alleged infringement.  Without that evidence, the Individual Defendants are entitled to judgment as a matter of law.

Making matters even worse for CSC, it will be impossible for them to produce any such evidence.  For the period when the legal form that allegedly infringed on CSC's copyright was in use, the jury awarded 100% of the profits earned as damages against the CAM Entities.  As a result, for that period of time, there are no additional damages that can be awarded against the Individual Defendants.  For the subsequent period, the jury awarded no damages against the CAM Entities.  As a result, for that period of time, it would be inconsistent for an award of damages to be entered against the Individual Defendants, because their only use of the form was through the CAM Entities.  Accordingly, not only has CSC previously failed to produce any evidence supporting a damages award against the Individual Defendants, but it will be impossible for CSC to do so without contradicting the jury's prior verdict.

It is time for this matter to finally be put to rest.  No evidence exists that supports an award of damages against the Individual Defendants.  Accordingly, the Individual Defendants are entitled to summary judgment in this matter.

## II.     STATEMENT OF RELEVANT FACTS.

CSC's sole claim in this action is for copyright infringement.  [*See* Ex. A (Docket No. 71).]  After a jury trial in this matter, the jury awarded damages in CSC's favor as follows:

- $961,321 against Charter Asset Management Fund, LP;
- $213,321 against Charter Asset Management Fund GP, LLC;
- $154,000 against Paul Im individually; and
- $396,000 against David Park individually.  [Ex. C (Docket No. 436).]

2

1    Notably, the damages awarded against the CAM Entities equaled their profits

2    earned during the period when the allegedly infringing work was in use, *i.e.* prior to

3    May of 2014. [*See* Ex. 734.] The jury did not award damages against the CAM

4    Entities for the subsequent period, *i.e.* after May of 2014. [*Id.*][1]

5    　　　The Individual Defendants subsequently moved for a new trial due to the

6    jury's award of damages against them despite CSC's failure to present evidence that

7    the Individual Defendants earned any profits attributable to the alleged

8    infringement. [Ex. D (Docket No. 451).] CSC, in turn, did not move for an additur

9    of damages, or alternatively a new trial, based on the jury's failure to award post-

10    May 2014 damages against any of the defendants. In its Opposition to the

11    Individual Defendants' motion, CSC asserted that testimony at trial as well as the

12    financial categories of Incentive Income, Investment Income, Management Fee

13    Income, and Earned Incentive Allocation evidenced profits attributable to the

14    Individual Defendants. [Ex. E (Docket No. 456).] In their Reply, the Individual

15    Defendants established that the evidenced referenced in CSC's Opposition consisted

16    entirely of categories of profits attributable to the CAM Entities, not the Individual

17    Defendants, and therefore, CSC had not cured its failure to identify profits

18    attributable to the Individual Defendants. [Ex. F (Docket No. 467).]

19    　　　This Court agreed with the Individual Defendants, and granted the motion for

20    a new trial. [Ex. G (Docket No. 469).] In doing so, the Court specifically noted

21    that CSC had failed to present any evidence that the Individual Defendants ever

22    ───────────────

23    　　　[1]　　　Prior to the jury trial, the defendants moved for an *in limine* order
precluding introduction of evidence or argument as to damages awardable against

24    the Individual Defendants. [Docket No. 244.] The Court denied the motion, and in
doing so the Court recognized that establishing liability as to the Individual

25    Defendants is "just a matter of tracing where the profits went or where the money
went." [Ex. M at p. 12:15-16.] It also noted that it was the plaintiff's burden to

26    establish the flow of funds. [*Id.* at 9:25-13:8 ("There is going to be evidence
supposedly of the damages and profits, and so they will be traced to wherever they

27    went. If they went to the corporation, they went to the corporation. If they went to
the individuals, they went to the individuals. But it is the plaintiff [who] is going to

28    have the burden of showing the amount and, you know, where the profits are.").]

3

1   received any of the funds attributable to the allegedly infringing activity.  [*Id.* at p.

2   9.]  The Court directed CSC to submit a statement either agreeing to a remittitur of

3   damages against the Individual Defendants to $0.00, or requesting a limited new

4   trial on the issue of damages attributable to the Individual Defendants.  [*Id.*]  CSC

5   requested a new trial.  [Docket No. 470.]

6        At the Status Conference held on January 26, 2017, the Court again

7   questioned CSC's ability to provide evidence of profits attributable to the Individual

8   Defendants, and inquired as to whether a new trial was actually necessary.  [Ex. N

9   (July 26, 2017 Transcript, at p. 3:14-7:19).]  In order to resolve the issue, the Court

10  directed CSC to submit an "Offer of Proof" showing what evidence it has, if any, to

11  establish damages attributable to the Individual Defendants.  [*Id.* at p. 8:1-19.]  In

12  doing so, the Court gave CSC very specific directions what it needed to provide in

13  its "Offer of Proof":

14            You have to have the paper trail to show that the money
              went to [the Individual Defendants] as opposed to going to
15            the corporations.  You don't have any of that.  [*Id.* at pp.
              7:15-17, 8:16-19.]
16
17       At the March 16, 2017 hearing on the Offer of Proof, the Court once again

18  found that CSC had failed to carry its burden of establishing that the Individual

19  Defendants had earned any profits attributable to the alleged infringement.  [Ex. J

20  (Docket No. 479).]  Accordingly, the Court ordered that the Individual Defendants

21  submit a Motion for Summary Judgment in order to resolve the issue of whether

22  CSC is entitled to recover damages against them.  [*Id.*]

## III.    STANDARD OF MOTION FOR SUMMARY JUDGMENT.

23       A party may prevail on summary judgment "if the movant shows that there is

24  no genuine dispute as to any material fact and the movant is entitled to judgment as

25  a matter of law."  Fed. R. Civ. P. 56.

26       A defendant is entitled to summary judgment where the plaintiff's evidence is

27  insufficient to establish an essential element of its claim.  *Celotex Corp. v. Catrett*,

28

4

477 U.S. 317, 331 (1986) ("[T]he moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.  [Citation].  If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.  [Citation].").

With respect to copyright claims, "a copyright infringement plaintiff seeking to recover indirect profits damages under 17 U.S.C. §504(b) must proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement."  *Mackie v. Rieser*, 296 F.3d 909, 911, 915-916 (9th Cir. 2002) ("In sum, we hold that to survive summary judgment on a demand for indirect profits pursuant to §504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement."), citing *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505 (9th Cir.1985).

Stated simply, the Individual Defendants are entitled to summary judgment if they can establish that CSC's evidence is insufficient to establish a triable issue of fact as to damages.  As further discussed below, it is clear in this case that CSC has no evidence of any damages recoverable against the Individual Defendants, and accordingly the Individual Defendants are entitled to summary judgment.

///
///
///
///
///
///
///
///

PARK AND IM'S MOTION FOR SUMMARY JUDGMENT
Case No. 2:14-cv-03385-GW-PLA

**IV.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE SUPPORTING A CLAIM FOR DAMAGES AGAINST THEM.**

**A.  CSC Is Required To Produce Evidence Establishing The Individual Defendants Earned Profits Attributable To The Alleged Infringement In Order To Recover Damages From Them.**

17 U.S.C. §504(b) provides the measure of damages that can be recovered pursuant to a claim for copyright infringement.  In relevant part, that statute provides as follows:

> (a)  In General. – Except as otherwise provided by this title, an infringer of copyright is liable for either -
> (1)  the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b), or
> (2)  statutory damages, as provided by subsection (c).
> (b)  Actual Damages and Profits. -The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

The statute provides for two distinct monetary damages – "actual damages" and indirect profits, *i.e.* "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages".

In this case, CSC seeks to recover profits attributable to the infringement, and not "actual damages".  [Ex. L (CSC's Amended Initial Disclosures).]  With respect to damages, the jury in the trial held in this matter was instructed as follows:

> Under applicable law, the copyright owner is entitled to recover "damages" any profits of the defendant attributable to the infringement.  You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship or nexus between the infringement and the defendant's gross revenue.

6

[Ex. B (Docket No. 423 at p. 10).]  This instruction is consistent with governing law, which provides that "profits of the infringer" take the form of profits earned by the copyright infringer that are "attributable to the infringement."  *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004).   The "profits of the infringer" may be either direct or indirect.  *Id*.  "Direct" profits are those generated by selling the infringing product, whereas "indirect" profits relate to revenue "that has a more attenuated nexus to the infringement."  *Mackie*, 296 F.3d at 914.

Regardless of the measure of damages, "it is apparent that a causal link between the infringement and the monetary remedy sought is a predicate to recovery of both actual damages and profits."  *Polar Bear*, 384 F.3d at 708.  In the case of indirect profits, the 9th Circuit has held "that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered."  *Id.* at 710.  "When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner."  *Id.* at 711, citing 4 Nimmer on Copyright §14.03, 14–34; *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) ("a court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement").  In other words, the revenue stream "must bear a legally significant relationship to the infringement" in order to be awarded as indirect profits.  *Id.*

**B.** **There Is No Evidence That The Individual Defendants Received Any Profits Attributable To The Alleged Infringement, And Therefore CSC Cannot Establish Damages Against The Individual Defendants.**

On two separate occasions, once in their Motion for a New Trial and once in response to CSC's Offer of Proof, the Individual Defendants established that CSC has no evidence to support a damages claim against them.  Specifically, there is no evidence of any profits attributable to the alleged infringement that were received or

7

earned by the Individual Defendants.  As further discussed below, it is impossible for CSC to identify any such evidence because the jury already awarded to CSC every penny of profit attributable to the infringement against the CAM Entities. Moreover, the various financial categories identified by CSC in its prior pleadings do not evidence profits earned by the Individual Defendants.  Accordingly, no evidence exists that could possibly support an award of damages against the Individual Defendants, and therefore, the Individual Defendants are entitled to summary judgment.

> **1.    An Award Of Damages Against The Individual Defendants For Post-May 2014 Profits Will Result In Reversible Error.**

Any award of damages against the Individual Defendants will necessarily result in inconsistent judgments, and therefore reversible error.  During the first trial in this case, the jury awarded as damages against the CAM Entities 100% of the profits earned during the period when the allegedly infringing form was in use, and 0% of the profits for the subsequent period.  If a second jury were to attribute any amount of profits for the post-use period as damages against the Individual Defendants, that award would directly conflict with the prior jury's award.  It also will be impossible for a second jury to award damages against the Individual Defendants for the period when the allegedly infringing form was in use, because 100% of those profits were already awarded as damages against the CAM Entities. Accordingly, it is legally impossible for CSC to recover any damages for copyright infringement against the Individual Defendants.

Inconsistent judgments are disfavored as a matter of law.  *See, Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (holding that in the context of *res judicata*, courts are bound to follow the most recent judgment, "even if we think the most recent judgment might be wrong", in order to avoid inconsistent judgments); *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218, 1220 (9th Cir. 2014) (holding removal of mass action was proper to avoid inconsistent judgments), citing

8

28 U.S.C. §1332; *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (holding default judgment should not be entered where claim is still pending against other defendants, and entry of default judgment may result in inconsistent judgments).

As this Court is aware, the jury in the first trial awarded damages against the CAM Entities totaling $1,174,642, which is precisely the amount of profits earned by the CAM Entities during the period when the allegedly infringing form was in use, *i.e.* prior to May of 2014.  [*See* Trial Ex. 734.[2]]  Notably, what this means is that the jury determined there was no "causal link" between profits the CAM Entities earned after they stopped using the allegedly infringing form, *i.e.* after May of 2014, and the alleged infringement.  In other words, despite the fact that the CAM Entities earned approximately $4 million in profits after May of 2014, the jury determined that those profits are not causally linked to use of the allegedly infringing form, and therefore could not be awarded as damages.

Making matters worse, CSC cannot establish any profits are attributable to the Individual Defendants during the period when the jury found that there ***was*** a causal link between profits and the alleged infringement, *i.e.* before May of 2014.  This is because the jury already awarded 100% of those profits as damages against the CAM Entities.  Accordingly, for the period before May 2014, there is no evidence of damages attributable to the Individual Defendants, and for the period after May 2014, it is impossible for a second jury to award damages against the Individual Defendants due to the original jury's determination that no causal link exists between the infringement and profits once CAM stopped using the infringing form.

---

[2]     The jury's verdict allocates the award of damages in the amount of $1,174,642 between the CAM Entities as follows:  $961,321 against Charter Asset Management Fund, LP, and $213,321 against Charter Asset Management Fund GP, LLLC.  As a result of determining that Charter Asset Management, LLC was not liable for copyright infringement (because it never used the allegedly infringing form), the jury understood that the $19,626 in profits earned by Charter Asset Management, LLC, reflected in Exhibit 734, should not be awarded as a measure of damages.

The award rendered by the original jury against the CAM Entities cannot be viewed in a vacuum.  The original jury's inherent finding that no damages could be awarded against the CAM Entities for the post-May 2014 period means that a second jury cannot find that damages can be awarded against the Individual Defendants during that same period of time.  Indeed, any finding by a new jury that the Individual Defendants are liable for damages for the period after May 2014 will be directly contrary to the inherent finding of the original jury that there is no causal link between profits earned during that period and the alleged infringement.[3]

Moreover, CSC has already missed its opportunity to argue that the jury erred in failing to award damages in connection with post-May 2014 profits.  By failing to move for an additur of damages, or alternatively a new trial, CSC accepted the jury's award against the CAM Entities.  CSC cannot now argue that the original jury's award was inadequate due to its failure to award post-May 2014 damages.

There is simply no way for CSC to recover any additional damages against the Individual Defendants in this matter.  Every penny of profits earned while the infringing form was in use, *i.e.* before May of 2014, has already been awarded to CSC, and there is no evidence of any other profits earned by the Individual Defendants during that period.  Therefore, the Individual Defendants cannot be liable for damages during that period.  CSC failed to convince the original jury that it was entitled to damages for the subsequent period, *i.e.* after May of 2014, and CSC cannot recover damages during that period either.

Accordingly, it is legally impossible for CSC to establish any damages can be awarded against the Individual Defendants.

///

///

---

[3]     The only way this would be possibly is if the Individual Defendants somehow derived profits independently in their individual capacities, *i.e.,* without any involvement of the CAM Entities.  However, CSC has not presented any evidence to support such a theory, nor has it ever advanced that argument.

10

### 2. CSC's Prior Attempts To Identify Evidence Of Damages Against The Individual Defendants Have All Failed.

CSC's has previously attempted, and failed, to point to any evidence that supports an award of damages against the Individual Defendants.  The evidence that CSC has previously identified is: (a) CAM Fund's K-1s, (b) the "Investment Income" line item on CAM Fund's financial statements, (c) the "Management Fee" and "Incentive Income" line items on CAM Fund's financial statements, and (d) the "Carried Interest" category on CAM Fund's financial statements.

As will be further discussed below, none of the above-listed "evidence" supports an award of damages against the Individual Defendants because it fails to demonstrate that any profits attributable to the infringement flowed to the Individual Defendants.  Indeed, the mere fact that CSC must resort to CAM Fund's financial statements, rather than W-2s, 1099s, cancelled checks, and K-1s issued to the Individual Defendants, or some other evidence showing the receipt of funds by the Individual Defendants, is a clear sign of CSC's utter lack of evidence in support of a damages award against the Individual Defendants.

### a. CSC's Prior Attempts To Rely On K-1s Fails To Support An Award Of Damages Against The Individual Defendants.

In its Offer of Proof, CSC pointed to K-1s that were issued by CAM Fund to CAM GP, *not to the Individual Defendants*, in an attempt to argue that it possessed K-1s showing a flow of funds to the Individual Defendants.  [Ex. E (Docket No. 473 at p. 9:15-28).]  A brief review of the K-1s, however, quickly revealed that the entity issuing the K-1s was CAM Fund, and the "partner" to whom the K-1 were issued was CAM GP.  [Docket No. 477, Ex. J at pp. CAM0074184, 0074185, 0074188-0074190, 0074211, 0074215; *Id.* at Ex. K at pp. CAM0075005-0075008, 0075011-0075016, 0075038, 0075042.]  These K-1s were *not* issued to the

///

11

Individual Defendants, and therefore, they do **not** reflect the tracing of profits from the CAM Entities to the Individual Defendants.

> **b.      CSC's Prior Attempts To Rely On The "Investment Income" Category Fails To Support An Award Of Damages Against The Individual Defendants.**

In both its Offer of Proof and its opposition to the Individual Defendants' Motion for a New Trial, CSC attempted to rely on the "Investment Income" financial category as evidence supporting a damages claim against the Individual Defendants.  [Exs. E, H (Docket Nos. 456, 473).]  That category, however, reflects CAM Fund's total investment revenue which, after expenses, is described as "Net Income/(Loss)" on CAM Fund's financial statements.  [Exs. 73, 74, 728, 733, 734.]  In other words, it could **not** have been properly awarded as damages against the Individual Defendants because it does not reflect the receipt of any revenue by the Individual Defendants.  In examining the entries that comprise this category, the Court will find that it represents continuing and additional capital contributions to CAM Fund, meaning the Individual Defendants **never received those funds**.  In other words, it reflects income (*i.e.*, revenue) that CAM Fund earned and retained based on investments.  [Exs. 73, 74, 728, 733, 734.]  The entries that comprise this category do not indicate that any funds were ever disbursed by CAM Fund and **received** by the Individual Defendants.

More importantly, **the "Investment Income" category is already reflected in the profits earned by CAM Fund damages awarded by the jury**.  As this Court will recall, the damages award against CAM Fund and CAM GP totaled $1,174,642.  That figure ties directly to CAM Fund's and CAM GP's profits during the period when the allegedly infringing form was in use, as reflected in Exhibit 734.  [*See* Ex. 734.]  In comparing Exhibits 73 and 734, the Court will see that the total "Net Income/(Loss)" entry on Page 6 of Exhibit 73 for the year 2013 - $405,148.50 – is **exactly the same** as the net income figure for CAM Fund on Exhibit 734 for the

12

same year - $405,148.50.  The same is true of the "Net Income/(Loss)" entry for the period of time in 2014 when the allegedly infringing form was in use.  That is because the "Investment Income" category referenced by CSC's opposition is a line item that ultimately leads to a breakdown of the Individual Defendants' (and other investors') capital balance in CAM Fund (*i.e.*, it is an allocation of profits *earned by CAM Fund* that were *already awarded as damages against CAM Fund*).

Clearly, the "Investment Income" category does not represent gross revenue received by the Individual Defendants.  More importantly, this particular category was included in determining the amount of profits awarded as damages against CAM Fund.  Any attempt to tie this category to the Individual Defendants is improper and would result in a "double recovery" of damages.

### c.  CSC's Prior Attempts To Rely On The "Management Fees" And "Incentive Income" Categories Fails To Support An Award Of Damages Against The Individual Defendants.

CSC also has previously attempted to rely on the "Management Fee" and "Incentive Income" financial categories as evidence supporting a damages claim against the Individual Defendants.  [Exs. E, H (Docket Nos. 456, 473).]  Those categories are sub-categories of the profits earned by CAM GP, and which were already awarded as damages against CAM GP.  Any attempt to attribute this revenue to the Individual Defendants would again constitute a "double-counting" of the exact same revenue that was used to determine the amount of CAM GP's profits.  Moreover, there is no evidence that the Individual Defendants ever *received* those funds – they are simply income line items on CAM GP's financial statements.

In examining the "Management Fees" category, the Court will quickly find that this is a sub-category of income on CAM GP's financial statements.  [*See* Ex. 734 at p. 5; Exs. 1008-1011.]  For example, for the year 2013, the Court will see that the Management Fee line item is a sub-category of net income for that year in

13

the amount of $138,563.  [*See* Ex. 734 at p. 5 Cell R32.]  This amount is *exactly* the same as CAM GP's net income for 2013 reflected on Page 1 of Exhibit 734. Accordingly, any attempt to rely on the "Management Fee" category is misplaced because (a) it is a sub-category of profits attributable to CAM GP, not the Individual Defendants and (b) it is a sub-category of profits that were already awarded as damages against CAM GP.

The same logic applies to the "Incentive Income" financial category. "Incentive Income" is yet another sub-category of CAM GP's total revenue as reflected on its financial statements.  [*See* Ex. 734 at pp. 4-5; *see also* Exs. 1008-1011.]  The Incentive Income entries are incorporated into determining CAM GP's total income every year, and were part of the total amount of damages award of $1,174,642 against CAM Fund and CAM GP.  Again, the "Incentive Income" category does not demonstrate the receipt of any gross revenues by the Individual Defendants, and it also reflects a sub-category of profits that were already awarded as damages against CAM GP.

To be clear, there is no evidence that the Individual Defendants ever *received* any of the "Management Fees" or "Incentive Income" from CAM GP. Additionally, as with "Investment Income" category, an award of damages against the Individual Defendants based on these categories would result in a "double recovery" of damages.

### d.    CSC's Prior Attempts To Rely On The "Carried Interest" Category Fails To Support An Award Of Damages Against The Individual Defendants.

Finally, CSC has previously attempted to rely on testimony that the Individual Defendants received 20% of the outside investors' Investment Income, or "Net Income/(Loss)", as profits.  [Exs. E, H (Docket Nos. 456, 473).]  In doing so, CSC has referenced the figure as "Carried Interest", but has not previously identified any specific category on the CAM Entities' financial statements.  [*Id.*]

14

However, that 20% figure is reflected on CAM Fund's financial statements as "Earned Incentive Allocation" and/or "Pro Forma Incentive Allocation". [Ex. 73 at pp. 4-5; Ex. 74 at pp. 4-6; Ex. 728 at pp. 4-6; Ex. 733 at p. 5.] CSC's reliance on the "Carried Interest" category is misplaced for several reasons:

First, as explained above, the "Investment Income" category is already reflected in CAM Fund's profits, which were awarded as damages against CAM Fund. Any attempt to add another 20% on top of the "Investment Income" category would result in a "double recovery" of damages by CSC. To be clear, "Investment Income" was already included in the profits attributable to CAM Fund and awarded by the jury as damages. Thus, it is would be improper to simply attribute an additional 20% to the Individual Defendants. Moreover, the testimony of Mr. Park that CSC previously relied on does not state that CAM Fund ever disbursed the "20% carried interest" to the Individual Defendants, and there is no evidence that the Individual Defendants received any funds attributable to "Carried Interest". Additionally, there is no evidence that the investors in CAM Fund paid any monies directly to Mr. Im and/or Mr. Park in their individual capacities.

Second, as discussed above, the "Carried Interest" category is depicted by the "Earned Incentive Allocation" and/or "Pro Forma Incentive Allocation" entries on CAM Fund's financial statements. [*See* Exs. 73, 74, 728, and 734.] In this instance, the Earned Incentive Allocation and Pro Forma Incentive Allocation entries simply reveal a re-allocation of the investors' capital contribution balances by attributing 20% of the outside investors' Investment Income to the Individual Defendants. Capital contribution balances do not reflect *funds disbursed or revenue received*. In fact, quite the opposite – they are an entity's *internal* bookkeeping mechanism for tracking equity - the entity's profits or investments that were *not* disbursed to investors.

Accordingly, and once again, any attempt by CSC to rely on Mr. Park's testimony concerning the 20% allocation, or any argument relating to the "Carried

15

Interest" category, cannot provide a factual basis for a damages award against the Individual Defendants.

## V.   **CONCLUSION**

CSC will not be able to produce any evidence that the Individual Defendants received profits causally linked to the alleged infringement in this matter. Accordingly, the Individual Defendants are entitled to summary judgment.


DATED: May 22, 2017          **SAUER AND WAGNER LLP**


By: _____ */s/ Gerald L. Sauer* _____
          Gerald L. Sauer
Attorneys for Defendants
CHARTER ASSET MANAGEMENT, LLC,
CHARTER ASSET MANAGEMENT
FUND, LP., CHARTER ASSET
MANAGEMENT FUND GP LLC, PAUL
IM, and DAVID PARK