1              UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3                  HONORABLE GEORGE WU

4          UNITED STATES DISTRICT JUDGE PRESIDING

5                       - - -

6
Charter School Capital, Inc.,       )
7                      PLAINTIFF,    )
                                     )
8    VS.                             )   NO. CV 14-03385 GW
                                     )
9    Charter Asset Management Fund,  )
                       DEFENDANT,    )
10   _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                LOS ANGELES, CALIFORNIA

15               MONDAY, JULY 25, 2016

16

17

18        _____

19             KATIE E. THIBODEAUX, CSR 9858
               U.S. Official Court Reporter
20             312 North Spring Street, #436
               Los Angeles, California 90012
21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
1    APPEARANCES OF COUNSEL:

2

3    FOR PLAINTIFF:

4         LATHAM AND WATKINS
          BY:  RUSSELL SAUER
5         -and- JAMES MOON
          -and- JAMIE SPRAGUE
6         355 South Grand Avenue
          Los Angeles, CA  90071
7

8    FOR DEFENDANT:

9         SAUER AND WAGNER LLP
          BY:  GERALD SAUER
10        -and- AMIR TORKAMANI
          1801 Century Park East
11        Suite 1150
          Los Angeles, CA 90067
12

13        -and-

14

15        MOBILITY LEGAL PC
          BY:  DAVID BURTT
16        317 Washington Street
          Suite 207
17        Oakland, CA  94607

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          LOS ANGELES, CALIFORNIA; MONDAY, JULY 25, 2016

 2                      8:40 A.M.

 3                      - - - - -

 4

 5

 6          THE COURT:  Let me call the matter of Charter

 7   School versus Charter Asset.

 8          MR. R. SAUER:  Good morning, your Honor.  Russell

 9   Sauer of Latham and Watkins.  And with me are my

10   colleagues, James Moon and Jamie Sprague.

11          MR. G. SAUER:  Morning, your Honor.  Gerald Sauer

12   appearing on behalf of the defendant.  With me today is

13   my colleague Amir Torkamani.

14          THE COURT:  All right.  On the line, we have?  The

15   Charter School case?

16          MR. BURTT:  This is David Burtt on behalf of the

17   defendants as well.

18          THE COURT:  We are here for pretrial conference.

19   Why don't you guys sit down.  We will talk about this

20   stuff.

21              However, let's note that I handed out to

22   counsel who were here just a publication that talks about

23   an issue that I don't think has really been addressed

24   head on.  There is kind of like some arguments around it

25   that really was never argued head on, and I think we have
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    to resolve prior to trial.  And let me ask counsel, did

 2    you all have an opportunity to read the I guess the

 3    portion from the Copyright Laws, Second Edition, from the

 4    Federal Judicial Center?

 5         MR. R. SAUER:  I believe we have, your Honor.

 6    Ms. Sprague will be addressing the issues relating to

 7    that concept.

 8         THE COURT:  Before we get into that, let me just

 9    ask do you want me to do the motions in limine first?

10    Also, there was a question I had as to which ones were

11    still left open.  It was a little bit confusing because I

12    guess one of the parties which was a party is no longer a

13    party.  And they had some motions in limine.  I presume

14    that those motions in limine are out.

15         MR. G. SAUER:  Your Honor, we joined in those

16    motions in limine so we believe that they still would

17    be -- they are still in play.

18         THE COURT:  Okay.

19              Defense agree?

20         MR. R. SAUER:  Yes, your Honor.  There was

21    one motion that I believe defendants did not join which

22    would be the fourth motion.

23         THE COURT:  No.  Because I didn't do any of those

24    because I just figured the party was out, but I will do

25    them later.  We will have to come back on a second day.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   But let me do the ones that I have now.

2          We will start with the plaintiff's motions in

3   limine.  Plaintiff has motions in limine No. 1 to exclude

4   evidence of the -- exclude evidence in support of the

5   defendant's fair use defense.

6          THE COURT:  Let me just ask, out of curiosity, you

7   guys are representing the plaintiffs, and you guys are

8   representing the defendant?  You guys are in the wrong

9   seats.

10          Now, you can sit there for the time being, but

11   if this case ever goes forward, plaintiffs are that side.

12   Defendants are this side, and that is the reason why I

13   was really confused.  And not that that is the only

14   reason I am confused, but that is one of the reasons I am

15   confused.

16          MR. R. SAUER:  Well, I object to Mr. Sauer having

17   substituted in with the same last name.

18          THE COURT:  I was just wondering this.  I was

19   wondering what are the chances of that, and then the jury

20   for the first, I think if this case goes to trial, the

21   first I think at least two hours, the jury is going to

22   sit there going I wonder if they are related.

23          MR. R. SAUER:  Your Honor, for the record, I think

24   if Mr. Sauer would stand up, there will be no confusion

25   about this at all.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  I saw the movie Twins.

2          All right.  The first motion in limine is to

3     exclude evidence of the fair use defense.  And the

4     plaintiff's position is that the defendant specifically

5     withdrew the defense on February 9th of 2015 and the

6     defendant's are estopped from litigating the issue at

7     trial.

8          The defendant also noted that the fact

9     discovery closed on August the 28th of 2015 and that on

10    September 14th of 2015, the defendants did file an

11    amended response to the Interrogatory No. 14 seeking to

12    revive the fair use defense.  However, the fact that the

13    discovery cutoff was set for September 16th really didn't

14    give them any time to actually respond to that attempt to

15    revive the defense.

16         The defendants counter by noting that the

17    third party Kirton is going to assert fair use at trial

18    and also that the defendants are arguing that it was not

19    until the deposition of the []Orr counsel who were the

20    plaintiff's attorneys that the defendant learned of the

21    predicate facts of its -- I will use that in quotes --

22    underlying fair use defense.

23         Let me just ask, since Kirton is no longer a

24    party in this case, I don't think they are going to be

25    asserting a fair use defense.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1          MR. G. SAUER:  Your Honor, I think the point is
 2    that there is no prejudice.  And Mr. Burtt could talk
 3    about you have highlighted the history with respect to
 4    what went on in the discovery that at the very tail we
 5    finally had evidence to raise the defense.
 6          THE COURT:  Let me just stop.  That, I didn't even
 7    understand.  The various defenses, these are standard
 8    types of defenses in various types of cases, and I don't
 9    understand how you could not know that you have a fair
10    use defense, how, it springs like Athena from the head of
11    Zeus.
12          MR. BURTT:  It was during the deposition of
13    Charles Cardel, the Orr, Carrington and Sutcliffe lawyer
14    who created the document which was seven days prior to
15    the supplemental response where the key elements were
16    developed factually.
17          THE COURT:  I don't understand.  What did he say
18    that all of a sudden jolted the defendants into realizing
19    they had a fair use defense.  And I don't understand how,
20    you know, these particular defendants didn't know that
21    there was a possibility of a fair use defense when Kirton
22    knew from way back that there was a fair use defense.  So
23    I don't understand how it was somehow unknown to the
24    defendants that they had this defense until such time as
25    the deposition.
```

1          What did he say that sparked this lightbulb

2    above the head?

3          MR. BURTT:  He confirmed the nature of the

4    copyrighted works.  He confirmed that there was no impact

5    on the potential market for the value of the copyrighted

6    works.  That is the majority of the factors.

7          THE COURT:  Why is that anything new in regards to

8    fair use?  I don't understand again how Kirton -- is that

9    how you pronounce the name of the firm -- I don't

10   understand how Kirton knew that there was a possibility

11   of a fair use defense, but these defendants did not

12   considering that they are all part and parcel of the

13   parties involved in this lawsuit for a lengthy period of

14   time.

15         MR. BURTT:  Well, we would have to ask Kirton

16   that.

17         THE COURT:  No.  No.  It is the exact opposite

18   because you don't have to ask Kirton because Kirton said

19   that there was a fair use defense and even the defendants

20   knew that there was a fair use defense but they dropped

21   the defense after a period of time.  So, again, I don't

22   understand why any of that should cause the court to say,

23   oh, you know, I should give these defendants the

24   opportunity to raise the issue because, also, I don't

25   really understand the fair use defense in this context.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            Well, hearing nothing further, my ruling will
 2     be against the defendants in this regard.  You know, the
 3     defendant voluntarily decided not to pursue the
 4     affirmative defense after originally raising it.  And,
 5     again, I don't find that the excuse for why it now seeks
 6     late in the game to put it back in is a valid excuse.
 7     And so, therefore, fair use will not be argued by the
 8     defendants here.
 9            Although, frankly, even if they attempted to
10     argue it, I don't know how far that would have flown in
11     any case because I don't think the issue is fair use.  I
12     think the issue is the issue that I pointed out from the
13     handout that I gave.  That is the issue to my mind.
14            All right.  The next motion in limine from the
15     plaintiff is to exclude the evidence as to the purported
16     involvement of Paul Im's termination at the []Academie of
17     Vince.  And the defendants have filed non opposition.
18     So, therefore, I presume there is no objection from
19     anyone.  Therefore, I will grant that motion in limine.
20            So when the dust has settled, there are grants
21     as to both of those motions in limine.  I didn't see any
22     other motions in limine from the plaintiff.
23            Have I missed any?
24         MR. MOON:  That's correct, your Honor.
25         THE COURT:  As to the defendant's motions in
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    limine, one is to preclude any evidence or argument as to

2    damages awardable against the individual defendants

3    because the plaintiffs failed to specify amounts as to

4    each individual defendant.

5           Let me ask, I presume that the plaintiffs

6    produced evidence of damages, didn't it?

7        MR. MOON:  We did, your Honor, but the main point

8    here is that we are seeking infringer's profits which

9    means we are seeking the measure of defendant's profits

10   which information is solely within defendant's

11   possession, and those documents were produced by

12   defendants.  So what they are really claiming is we did

13   not recite back to them the information that they

14   provided to us.  We are not seeking any measure of actual

15   damages to the plaintiff.  We are seeking infringer's

16   profits.  I think that is the main point here.

17       THE COURT:  Well, let me just ask, is -- I presume

18   that the profits are the profits that would be, were

19   generated by the defendant entity?

20       MR. MOON:  Right, your Honor.  So the relationship

21   between the defendants, there is three defendant entities

22   called CAM, Charter Asset Management.  Those entities are

23   run by the two principals, Mr. Im and Mr. Park.  So this

24   motion has to do with the two individual defendants.

25           Their revenue, their profits they generated by

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   running the business, that the CAM business provides.

2       THE COURT:  Well, let me just ask, the copyright

3   violations, you can either get the infringers, direct

4   infringers or the indirect infringers.  So I don't

5   understand why there has to be a specification as to the

6   specifics as to, you know, a particular defendant because

7   you are entitled to the damages either from the

8   infringement itself or that are related in the particular

9   way that the copyright statute phrases it.

10      I guess it is the elements of profit

11  attributable, et cetera.  I don't know how exactly they

12  phrase it but something to that effect.  So I don't

13  understand why there has to be a statement as to the

14  individual amounts.  I mean, the amounts are the amounts.

15      MR. G. SAUER:  Your Honor, just briefly.  There

16  are no profits attributable to the individuals.  The

17  entities are the ones that were in the business of using

18  the forms, and we have given them all the information on

19  that.  They are not going to be able to say, well, no,

20  you profited this way, you profited that way.  It all

21  flows back to the entity.  They have all that

22  information.

23      THE COURT:  Well, but if it is the entity, if it

24  is the individuals that cause the entity to violate the

25  copyright, those individuals are liable.  But I agree

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1   with you that the amount wouldn't be unless they can --

 2   unless the defendants -- sorry, the plaintiffs are going

 3   to show that a particular defendant was given an X

 4   amount, you know, outside of it going to the corporate

 5   defendant, then I don't understand why we are even

 6   talking about this.

 7          MR. G. SAUER:  That is the point, your Honor.  The

 8   point is that if there is any liability we have the

 9   entities.  If the entities were shams, they could pierce.

10          THE COURT:  Yes.

11          MR. G. SAUER:  The point is that is why we have

12   the entities.  To go after the individuals is incorrect

13   in this circumstance.

14          THE COURT:  Well, I don't know if it is incorrect.

15   It is just a matter of tracing where the profits went or

16   where the money went.  That's all it is, and I presume

17   both sides are aware of that and I presume both sides are

18   going to be litigating that.

19               So I mean, my inclination in this one is to

20   deny the motion because I don't think it is necessary.

21   There is going to be evidence supposedly of the damages

22   and profits, and so they will be traced to wherever they

23   went.  If they went to the corporation, they went to the

24   corporation.  If they went to the individuals, they went

25   to the individuals.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              But it is the plaintiff is going to have the

 2      burden, initial burden of showing the amount and, you

 3      know, where the profits are.  So I am not going to

 4      preclude them from attempting to go after the individual

 5      defendants and say, well, no, you got this money either

 6      directly or indirectly as a result of the violation.

 7      They can do that.  So my ruling would be to deny the

 8      motion in limine No. 1.

 9              As to motion in limine No. 2.  It is to

10      preclude evidence, arguments of damages other than use of

11      the Kirton form because the defendants can't claim

12      damages after the, sorry, the plaintiffs can't claim

13      damages after the defendant stopped using the alleged

14      infringing form and started using other forms that were

15      not infringing.

16              The plaintiffs oppose by arguing that the

17      defendants already lost this on summary judgment, the

18      summary judgment motion.  And the defendants respond that

19      they can use the motion in limine to clarify or to I

20      guess do something.

21              But the problem is the reason why I denied the

22      motion for summary judgment is that there was material

23      issues of fact in dispute.  There are still material

24      issues of fact in dispute.  So I can't understand why I

25      would be precluding the plaintiffs from making this
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    argument.

2              They may not have enough evidence.  Well,

3    okay, if they don't have enough evidence, then ask for a

4    directed verdict at the time of the plaintiffs ending

5    their case in chief.  And if they haven't presented me

6    with enough stuff, I will grant the motion at that point

7    in time or grant the request at that point in time.

8              But at this point in time, I am not going to

9    say they can't attempt to make the argument.  One wonders

10   how they are going to go about doing that because,

11   obviously, a copyright is different than a patent.  And

12   so if you are no longer using the form and otherwise, for

13   example, referencing the form or doing whatever with the

14   form, then it seems to me that I would probably agree

15   that normally copyright violation would end at that

16   point.

17             But, again, I don't have all the facts in

18   front of me at this stage, and what facts in front of me

19   are somewhat in dispute, so therefore I can't make a

20   ruling.  So my ruling in the end on motion in limine

21   No. 2 would be to deny the motion, but, obviously, it

22   could be reraised at some point in time in the course of

23   litigation if, in fact, there is a failure to demonstrate

24   why there is a continued violation of the copyright.

25        MR. G. SAUER:  May I be heard just briefly?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1      I guess our concern is how do you unring the

2  bell because, clearly, they will be able to put on a

3  measure of damage that will -- they will put on a revenue

4  number.  We will get to it.  The burden will shift to us.

5  We will have to see what it is.  But they are going to

6  have numbers that are going to go way outside --

7      THE COURT:  But the numbers have to be related to

8  the jury instructions.  The jury instructions will tell

9  them certain things one of which is that the damages are

10  based on this.  If they don't have any -- and, again, if,

11  in fact, it is true that after they sit down in their

12  case in chief they have not presented any evidence

13  sufficient to justify damages after the period of time

14  when it is clearly shown that the defendants stopped

15  using the form, make the motion.  I will grant it at that

16  point in time if there is no evidence.  And that will cut

17  off the threat.

18      But if, however, there is evidence that could

19  form the basis of a recovery after the alleged cessation

20  of the use of the form, well, then, it is up to the jury

21  to decide and you have to do that based on the jury

22  instructions.

23      MR. G. SAUER:  Thank you, your Honor.

24      THE COURT:  So that will be my ruling on motion in

25  limine No. 2.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          Motion in limine No. 3 is to preclude evidence

2     of profits based on investment in CAM.  Again, the

3     plaintiffs argued that the court already ruled on this on

4     the motion for summary judgment, and the defendants make

5     the same response.  And my conclusion on this one is the

6     same as my conclusion on No. 2.  I am not going to grant

7     the motion at this point in time, but, again, I do feel

8     that, again, what we are talking about here is copyright

9     infringement.

10         And I don't understand how an investment is a

11    copyright violation unless the investment utilizes the

12    alleged infringing copyrighted materials to cause the

13    investment, but, even then, one can make the argument

14    that it is not -- the damages are not the investment

15    because there is no evidence that these investors would

16    have otherwise invested in the plaintiff.

17         So I mean, it is a violation, but, you know,

18    it seems to be, again, somewhat farfetched, that as a

19    theory.  So I don't know how far it is going to go, but,

20    conversely, the problem I have is the period of time for

21    the motion of summary judgment, there are no -- let's put

22    this way, there are disputed facts in that regard.  So

23    that is going to have to be resolved in front of the

24    jury.

25         However, if at the end of the plaintiff's

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    case, if they haven't proffered evidence in support of
 2    that particular theory, again, the defendants can make
 3    the motion, and I will, if I find that there has been a
 4    failure in that regard, I will kick out that theory.  It
 5    is sort of novel, and I don't know how far it is going to
 6    fly.
 7         MR. R. SAUER:  Your Honor, may I interrupt?  I am
 8    just going to pour some water.  I didn't want to
 9    interrupt you before we move on to the next motion.
10         THE COURT:  So, in other words, your getting a
11    drink of water is supposed to stop my eloquent
12    recitation?
13         (Laughter.)
14         MR. R. SAUER:  I didn't want to appear to be rude,
15    but apparently I did.
16         THE COURT:  I know you are rude.  Let me stop at
17    this point in time for you to get a drink of water.
18         Does anyone else want to do a pregnant pause
19    for anything?  He is giving you the time to do it.  Do
20    you want to go stretch out.
21         MR. R. SAUER:  I will forego the water, your
22    Honor.
23         THE COURT:  No.  I think you need the water now.
24    I am thirsty.
25         THE COURT:  Let the record reflect.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          And if you spill, you are going to have use

2     your tie to clean it up.

3          All right.  No. 4 is to preclude evidence,

4     argument that CAM's total cash intake is gross revenue,

5     and CAM's income from its operations is profit.  And the

6     plaintiff opposes because the defendant, the argument is

7     that the defendants want to preclude evidence argument as

8     to items that are clearly admissible.  And if the

9     defendants have counter evidence, they can present the

10    counter evidence and leave it up to the jury to decide

11    the issue.

12         I have a problem with this motion as well.

13    You know, it seems to me that it is what the defendants

14    really seemingly want is some kind of Daubert hearing on

15    the issue, and you didn't ask for a Daubert hearing on

16    the matter.  And, frankly, I wouldn't have given the

17    Daubert hearing anyway because, again, what constitutes

18    profits and operational expenses and things of that sort

19    are not that complicated.  And I presume if there is

20    particular aspects of this particular situation that

21    require expert testimony that you guys have expert

22    testimony in that regard.

23         So my ruling would be to deny the motion.  It

24    not that complicated an issue, frankly.  And, normally,

25    one considers cash intake to be gross revenues or things

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   that may not actually be cash but are other things that

2   might constitute revenue like exchanges or something of

3   that sort, but, again, it is not that complicated an

4   issue.  So I would deny the motion.

5        MR. TORKAMANI:  If I may briefly, your Honor.

6   Your Honor essentially hit the nail on the head in that

7   what we are arguing about here is what is the definition

8   of revenue, and the reality here is that both sides,

9   despite us as attorneys who may argue about it, the

10  parties are actually in agreement about what revenue

11  means.  And that is the face value of the receivable

12  minus the cost of obtaining that receivable.

13           If I may very briefly read an excerpt from the

14  deposition of --

15       THE COURT:  Let me just stop.  I mean, I thought

16  that is what you were trying to prevent them from

17  proffering.  I mean, that is standard definitions of

18  gross revenue and profit.

19       MR. TORKAMANI:  The way that we are defining gross

20  revenue and the way that CMC themselves define gross

21  revenue is the face value of the receivable minus the

22  money that CAM had to put up to obtain that receivable.

23  And the way they were defining -- so that would result in

24  revenue or income.

25           And the way they were defining profit and the

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    way that CSC also defines profit is that dollar amount

2    minus other expenses, overhead expenses, employee

3    expenses, whatever they may be and that information will

4    be presented before the jury and they can decide that

5    issue.

6              What CSC would like to do is to define revenue

7    solely as the face value of the receivable without taking

8    into account the money that was put up to obtain that

9    receivable.  And if I may, your Honor --

10         THE COURT:  I don't think that is what they are

11   arguing because if that is what they were arguing that

12   would be wrong.

13         MR. TORKAMANI:  That is exactly what they are

14   arguing.

15         THE COURT:  I didn't get a sense of that.

16             Is that what you are arguing?  In other words,

17   every cent they take in is profit?

18         MR. MOON:  No, your Honor.  So it is not profit.

19   So the statutory scheme --

20         THE COURT:  Although what they may be arguing is

21   what -- every cent that you get is loss to their client.

22         MR. MOON:  Intake.  It is the amount of money they

23   actually received, they take in the door, that is

24   revenue.  They are perfectly allowed at trial to

25   establish that the cost, the upfront cost of obtaining

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  that revenue is a deductible expense under the statute.

2  It is under 504.  But there is a two part scheme where we

3  have to establish gross revenue, they have to establish

4  deductible expenses and then you get the profits.  But

5  nobody is arguing about that.  We are just saying the

6  statute requires us to make this showing.  And we are

7  going to show how many dollars came in the door.

8        THE COURT:  Let's put it this way, the jury

9  instructions as to damages are not complicated in the

10  Ninth Circuit.  They are 17 something, 1731 to -34.  So

11  these these are the instructions, and that is what the

12  jury is going to look at.  Either side can make whatever

13  arguments they want in that context.  But the overall

14  borders of what you can argue are the Ninth Circuit jury

15  instructions as to damages and as to copyrights.

16        MR. TORKAMANI:  Well, again, the problem we have

17  here, your Honor, is how we are defining revenue because

18  CSC is entitled to put up evidence of what revenue is,

19  what the gross revenue is.  And CSC itself, if I may read

20  a very brief excerpt from the deposition of CSC's own

21  chief financial officer as to what revenue constitutes

22  is.

23        The question was, on the financials what

24  amount does CSC consider to be revenue.

25        And the answer, it would be the spread that we

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1    earn on our activities which take the form of interest

 2    income and what we all gain on redemption as well as fee

 3    income of both our working capital and our real estate

 4    business.

 5              Question, and what is the spread?  How is the

 6    spread calculated?  Isn't that essentially the difference

 7    between the amount of money that CSC provides upfront and

 8    the amount of money that CSC receives when the receivable

 9    is paid by either the school or the school district or

10    the other entity?

11              And the answer, more -- that is more or less

12    yes.

13              So CSC itself has admitted that revenue is the

14    face value of the receivable minus the money that was put

15    up to obtain the receivable.  Then the next question is,

16    and how is it that CSC calculates it profits?

17              Answer, pursuant to Generally Accepted

18    Accounting Principles, our revenues less our expenses.

19              So CSC, again, has admitted that profits are

20    the revenue minus those other expenses we were just

21    discussing.  So CSC, again, although we as attorneys can

22    argue about what revenue means, CSC itself has admitted

23    that revenue, the revenue numbers should be the face

24    value of the receivable minus the cost to acquire the

25    face value.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            MR. MOON:  If I may, your Honor.  The witness was

 2   testifying about CSC's financial statement which are

 3   obviously governed by certain rules, GAAP and []gasp.

 4   That has nothing to do with the statutory scheme here,

 5   and defendants are more than welcome to present that

 6   evidence at trial and say what the gross revenue is and

 7   what the profits are, but there is no basis for barring

 8   us from showing the jury this is how much they took in

 9   and that is what we consider to be gross revenue.

10            THE COURT:  Well, I think this kind of merges

11   into the underlying issue that the court has in regards

12   to the scope of this copyright, and so I will reserve

13   this one a little bit.  Although, I will put it on the

14   back burner temporarily because we do need to resolve

15   that issue.  Once I resolve that issue, then I can

16   probably resolve this issue as well.

17            MR. TORKAMANI:  If I may just give you the

18   citation?

19            THE COURT:  Why do I need the citation?

20            MR. TORKAMANI:  Because it is CSC's own definition

21   of what revenue is.

22            THE COURT:  I don't weigh the evidence at this

23   point in time.  Again, I understand the position.  I have

24   not made a ruling.

25            MR. TORKAMANI:  Thank you.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1        THE COURT:  All right.  I will reserve that one.

 2             Then, the fifth motion in limine is to

 3   preclude evidence argument that Paul Im violated the

 4   confidentiality agreement or that Kirton misappropriated

 5   trade secrets because those claims were ones that have

 6   been dismissed already in this action.

 7             This one is also related to No. 6, and that is

 8   to preclude evidence that the defendants initially sued

 9   Kirton, and, then, thereafter, dismissed its I guess

10   cross-claim against Kirton.

11        MR. R. SAUER:  Your Honor, I am not sure that they

12   are that related.  I think the issue as we understood it

13   from the motion in limine is they wanted to prevent any

14   suggestion or claim that Mr. Im or Kirton McConkie

15   violated any trade secrets.  We are not making that

16   claim, and we said that in our opposition.

17             The broader issue, I think, is whether or not

18   the plaintiffs can make reference to the fact that the

19   Charter School Capital documents were confidential and

20   that when Mr. Im first appropriated them, he knew they

21   were confidential.  And so it is more a question of

22   confidentiality, it doesn't really relate to --

23        THE COURT:  I don't understand that because,

24   again, we are talking about a -- this is a copyright

25   case, and the notion of the confidentiality is inapposite
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    -- is that the word?

2          MR. G. SAUER:  Inapposite.

3          THE COURT:  Inapposite to the concept of a

4    copyright because a copyright, by definition, is the

5    exposure of the expression.  If there is -- if the

6    expression is confidential, it is not copyrightable or

7    either that, then you don't have a real -- either you

8    don't have a real trade secret or you really don't have a

9    real copyright.  But the notion of a confidentiality

10   vis-a-vis copyrighted information is, it is kind of like

11   weird.

12         MR. R. SAUER:  We understand that, your Honor, but

13   I think what we are going to hear is a lot -- and we will

14   come to No. 6 obviously, but we are going to hear lots of

15   argument about they were told it wasn't confidential and

16   so on and so forth.  That has sort of been a theme

17   throughout.

18         THE COURT:  What difference does it make?  Again,

19   I don't see that issue as helpful to either side because,

20   again, this is a copyright infringement case.  So if the

21   document itself which is the subject of the copyright, if

22   persons were told that they should not be showing it to

23   other people, it is kind of like, well, why do you have a

24   copyright on it.  Because, again, the whole purpose of a

25   copyright is to profit from the expression as opposed to

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    a trade secret where you have something that you don't

2    want other people to know except certain other people,

3    and those other people, normally, if you view portions of

4    that trade secret, they might be kept under some sort of

5    confidentiality provision so that the information or the

6    expression is not shown to other people.

7            But I don't understand.  The whole point of a

8    copyright is, for example, copyright, you have to present

9    the document to the copyright office.  There is no

10   obligation for the copyright office not to release that

11   information and expose it to the world.

12      MR. R. SAUER:  Understood, your Honor.  But,

13   again, let's be clear.  We are not talking about claims

14   of any legal claims.  We are talking about the fact that,

15   and it goes, quite frankly, in large measure, to Mr. Im's

16   credibility that when he first misappropriated these

17   documents, he knew they were confidential.

18      THE COURT:  That is what I don't understand.  I

19   don't understand how -- let me step back.  Are these

20   documents documents other than the copyrighted document?

21      MR. R. SAUER:  No.  No.  What we are talking about

22   is the forms that Mr. Im had access to under terms that

23   were confidential.  He took the forms.  He then passed

24   them onto his soon-to-become business partner.  They then

25   used those forms and moved forward with their new

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  business.  And so it gets to the heart of credibility.

2  They are not separate independent claims.

3       THE COURT:  Let me hear from the defendants.

4       MR. TORKAMANI:  Again, I think, your Honor is

5  right on the mark here.  This isn't a breach of

6  confidentiality case.  This is a copyright case, and

7  whether there was a confidentiality provision that was

8  breached or not has absolutely nothing to do with whether

9  the copyright was infringed or not.

10      THE COURT:  I would tend to agree.

11      MR. MOON:  Your Honor, defendants have argued and

12 they intend to argue at trial that because this financing

13 agreement was not covered by a confidentiality agreement

14 at the time that it was copied, that it is in the public

15 domain, that has been an argument that they --

16      THE COURT:  That is a stupid argument.  It doesn't

17 show that it is in the public domain.  If it is

18 copyrighted, it is not in the public domain by

19 definition.  So if they are making an argument like that,

20 you can laugh them off, and I will tell the jury it is a

21 stupid argument.

22      MR. MOON:  That is why we want this evidence in,

23 your Honor.

24      THE COURT:  No.  In other words, irrelevant

25 evidence doesn't come in because they want to make a

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    stupid argument.  The civil litigation experience would

2    be even wackier than it already is.  So, no, they don't

3    get to make that argument.  No, you don't get to make

4    that argument.  Why waste everybody's time.

5            All right.  So I will grant that motion in

6    limine in part.  Who knows.  They may open the door to

7    something where it may come in.  And if they do, then, of

8    course, you can run the horse through the barn door after

9    that happens.  But if they don't, then you don't.

10           No. 6, then, since it is different, again, I

11   don't think that even if -- well, let's just put it this

12   way.  Again, if Kirton is out at this point in time, I

13   don't understand why the fact that the defendants

14   initially brought an action or included in this action a

15   claim against Kirton and then they later dropped it, what

16   relevance is that?  Obviously, what Kirton did is going

17   to be relevant because that is the subject matter of a

18   lot of this stuff.  I understand that.  But what

19   difference does it make that the defendants brought the

20   action and then dismissed it out without prejudice?

21       MR. R. SAUER:  Your Honor, I guess, here is the

22   issue.  This is sort of the classic empty chair problem

23   that litigants face frequently.  But, traditionally, the

24   empty chair is a consequence of actions of the

25   plaintiffs.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1           They either don't sue the defendant and the
 2   defendant wants to blame the missing party, or they have
 3   sued another defendant and then settled with that
 4   defendant and the defendant wants to blame that party.
 5   Here, the empty chair is a creature of the defendant's
 6   third-party plaintiffs.
 7           And what the defendants have done in their
 8   motion is provided the court with a series of citations
 9   to generic orders issued by courts in a variety of
10   different cases, but they didn't provide you any context.
11   They didn't go back and look at the basis of those
12   orders.  In every single case that the defendants cited,
13   the claims and the parties who were dismissed by the
14   court -- I'm sorry -- the claims and the parties the
15   court said you couldn't make reference to, the court had
16   dismissed based on merits determinations.
17           THE COURT:  Well, no, but, again, we are not
18   saying they can't refer to Kirton.  In other words,
19   Kirton can be referred to by both sides in the case.  It
20   is the question of Kirton being sued and being dismissed
21   that is not going to be referenced in this case.
22           MR. R. SAUER:  So they want to then blame Kirton
23   McConkie for everything that went wrong without any
24   reference to the fact that the reason --
25           THE COURT:  Well, that might -- no, it doesn't
```

```
 1    work that way because, again, they have access to the
 2    copyright materials and supposedly they violated the
 3    copyright in that regard.  I mean, in that regard, Kirton
 4    is their agent and/or their, you know, employee or their
 5    whatever.  It is not -- they can't blame Kirton without
 6    blaming themselves.
 7         MR. R. SAUER:  We understand that, your Honor.
 8    That is why we have vicarious and contributory
 9    infringement claims.  But then, I guess what I would
10    suggest here is if I understand the court's concern, I
11    think the court ought to reserve ruling on this one and
12    see how the case develops.
13         THE COURT:  Again, I ruled No. 6 the same way as I
14    ruled No. 5.  I would grant it, but if they open the
15    door, they have opened the door.  And I can see them
16    opening the door depending on how they argue.  If they
17    make an argument that you are suggesting that they make,
18    I would say, yeah, the door is open at that point.
19         MR. R. SAUER:  That is all we are concerned about.
20         MR. MOON:  Your Honor, just to clarify the scope
21    of your ruling here.  They are asking to not allow
22    introduction of the fact that defendants sued Kirton
23    McConkie and that they are no longer in the suit.  That
24    is the extent of your order for clarification?
25         THE COURT:  Yes.
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1              MR. MOON:  Thank you, your Honor.

 2              THE COURT:  All right.  Were there any other

 3    motions in limine?  Have I missed any?  I think that it,

 4    isn't it, except for the ones that Kirton filed.  I

 5    haven't looked at those because I thought since they were

 6    going to be out, nobody was going to be arguin them.  And

 7    I didn't see a joinder as to all of them.  I only saw a

 8    joinder as to one of them.  And that was one of the ones

 9    that kind of like played into one of the discussions that

10    we already had here.

11              MR. G. SAUER:  Mr. Burtt can speak to that.  I

12    thought there was more than one joinder was my

13    understanding.

14              MR. BURTT:  There was one joinder to all of their

15    motions.

16              THE COURT:  Okay.  What document numbe is that?

17              MR. BURTT:  Let me pull it up real quick.  2255.

18              THE COURT:  All right.  I will take a look at

19    that, and I will look at those, and I will be prepared at

20    a subsequent, at the continuation of this pretrial

21    conference.

22                   Now, what I want the parties to do is I want

23    the parties to address in writing the handout that I

24    given because, you know, again, my understanding of what

25    the plaintiffs have I think differs from what the
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    plaintiffs think that they have to be blunt.  You just

2    have a copyright.  You don't have the patent.

3            And so, therefore, you can show that, you

4    know, that the use of the form, you lost money from the

5    use of the form but not from the concept that is embodied

6    in the form because it seems to me that this present

7    situation is like the case that is discussed in the

8    materials that I handed out which is starting from the

9    []Baker Selden concept but more like the -- or more

10   specifically like the Continental Casualty Company versus

11   []Bargely situation.

12           So I want the parties to brief this issue

13   because the question is to what extent does the plaintiff

14   have a basis for their claims of damages which gets back

15   to some of the earlier one or two of the earlier motions

16   in limine.

17       MR. R. SAUER:  Your Honor, if I might, I think we

18   obviously will review this more carefully and respond as

19   the court suggested.  Some of these issues are

20   intertwined with some of the Kirton McConkie motions in

21   terms of the standard, whether it is virtual identity or

22   substantially similar.

23       THE COURT:  Okay.  I tell you what, why don't I

24   continue this matter to the -- let's see.  You guys are

25   supposed to start trial on the 9th of August?

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

```
 1            MR. MOON:  Yes, your Honor.
 2            THE COURT:  I am starting trial tomorrow on a case
 3    with people who are here so I can't really say how
 4    horrible those people are loudly.  I can say it
 5    underneath my breath, but not loudly.
 6            So I hopefully will be finished with them.  I
 7    told them that I will tell the jury that it is going to
 8    be a bifurcated case.  I told them I will tell the jury
 9    that Stage 1 of the case will be done by Friday or Monday
10    at some point in time which hopefully means that the case
11    will be over before the 9th.  But if not, you will be
12    trailing starting the 9th until whenever I can get rid of
13    them.
14            So why don't I continue this matter to the 4th
15    of August, and I want supplemental briefing on that
16    issue, simultaneous filings by the -- both sides by the
17    28th and, then, simultaneous response to those filings by
18    noon on the 2nd.  And I will see you guys on the 4th at
19    8:30.
20            In addition, what I am also going to try to do
21    and I want the parties to focus, some of these questions
22    about damages will go to this area as well.  So, you
23    know, if you guys want, when you do your supplemental
24    briefs think of this issue in the context of damages.
25            Also, the length of trial.  You guys have
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    given me these estimates that I think are too long.  This

2    trial, you know, I think, again, there is a start on a

3    Tuesday I expect it to go to the jury either Friday or

4    Monday.

5              Also, I want the parties a lot of these facts

6    are really not in dispute.  You guys should give me a

7    stipulated set of facts.

8         MR. G. SAUER:  We submitted one, your Honor.

9         THE COURT:  It only had three or four things

10   unless I missed it.  What document is it?

11        MR. G. SAUER:  It wasn't in the pretrial

12   conference order.  It was a separate filing.

13        MR. MOON:  Document 319, your Honor.  It is about

14   three pages.

15        THE COURT:  All right.  I will take a look at

16   that.  All right.  And did you guys give me voir dire

17   questions?

18        MR. MOON:  Not yet, your Honor.  We have them.

19        THE COURT:  Well, again, just give it to me by

20   August the 2 nd.

21        MR. MOON:  Should we file those?

22        THE COURT:  Yes.  File them.  And also, I think

23   the witness list is somewhat doable.  Your exhibit list

24   however is crazy.  500 exhibits, are you serious?

25   Jurors, I can tell you this is my personal experience,

1  but I think I have had more trials than you guys have.

2  Jurors maybe look at five, ten documents at the most.

3  They are not going to look at 500 exhibits.  So if you

4  want a list, that is fine and dandy, but I can just tell

5  you it is a waste of your time and money.

6          And I am not going to order the copying cost

7  of 500 exhibits because I think it was not necessary, is

8  not necessary.  So keep that in mind.  You guys might

9  want to consider amending your exhibit list.

10          Also, in terms of the peremptories, I am

11  giving counsel four peremptories for each side.  We are

12  going to have eight jurors, and each side gets

13  four peremptories.

14          Also, for cause challenges are done at a

15  sidebar.  The peremptories are done in front of the jury.

16  I will allow sandbagging so you can pass without the

17  court considering the exercise of a peremptory.  But once

18  there are two passes, one from each side, then the jury

19  is selected.  So just keep that in mind.

20          Also, when do you exercise your peremptories,

21  you are only exercising as to eight.  So if there are 14

22  potential jurors in the box, the first eight are the

23  jury.  If you exercise a peremptory as to juror in seat

24  No. 8, then the juror in seat No. 9 becomes the 8thth

25  juror.  So don't go past and go to juror No. 11 because I

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    will have to tell you, no, that person is not in the jury

2    and you will probably upset that juror so then you will

3    have to kick him off or her off later anyway.

4              All right.  Does anybody have any questions at

5    this point in time?

6         MR. MOON:  We do have an issue with witness

7    availability, but we can address that at the next

8    hearing.

9         THE COURT:  Yes.  That is fine.  Anything else?

10        MR. G. SAUER:  No questions, your Honor.  Thank

11   you.

12        THE COURT:  So I will see you back on the 4th at

13   8:30.

14   (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1                           CERTIFICATE

2

3

4    I hereby certify that pursuant to Section 753, Title 28,

5    United States Code, the foregoing is a true and correct

6    transcript of the stenographically reported proceedings held

7    in the above-entitled matter and that the transcript page

8    format is in conformance with the regulations of the

9    Judicial Conference of the United States.

10   Date:  July 26, 2016

11

12    /s/ Katie Thibodeaux, CSR No. 9858, RPR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

**9**

**MR. BURT: [6]** 3/5 7/3 7/11
8/2 8/14 31/13 31/16
**MR. G. SAUER: [13]** 3/10
4/14 6/25 11/14 12/6 12/10
14/24 15/22 25/1 31/10 34/7
34/10 36/9
**MR. MOON: [15]** 9/23 10/6
10/19 20/17 20/21 22/25
27/10 27/21 30/19 30/25
32/25 34/12 34/17 34/20 36/5
**MR. R. SAUER: [17]** 3/7 4/4
4/19 5/15 5/22 17/6 17/13
17/20 24/10 25/11 26/11
26/20 28/20 29/21 30/6 30/18
32/16
**MR. TORKAMANI: [8]** 19/4
19/18 20/12 21/15 23/16
23/19 23/24 27/3
**THE COURT: [57]**

**—**

**-34 [1]** 21/10
**-and [4]** 2/5 2/5 2/10 2/13

**/**

**/s [1]** 37/12

**0**

**03385 [1]** 1/8

**1**

**11 [1]** 35/25
**1150 [1]** 2/11
**14 [2]** 6/11 35/21
**14-03385 [1]** 1/8
**14th [1]** 6/10
**16th [1]** 6/13
**17 [1]** 21/10
**1731 [1]** 21/10
**1801 [1]** 2/10

**2**

**2 nd [1]** 34/20
**2015 [3]** 6/5 6/9 6/10
**2016 [3]** 1/15 3/1 37/10
**207 [1]** 2/16
**2255 [1]** 31/17
**25 [2]** 1/15 3/1
**26 [1]** 37/10
**28 [1]** 37/4
**28th [2]** 6/9 33/17
**2nd [1]** 33/18

**3**

**312 [1]** 1/20
**317 [1]** 2/16
**319 [1]** 34/13
**34 [1]** 21/10
**355 [1]** 2/6

**4**

**436 [1]** 1/20
**4th [3]** 33/14 33/18 36/12

**5**

**500 [3]** 34/24 35/3 35/7
**504 [1]** 21/2

**7**

**753 [1]** 37/4

**8**

**8:30 [2]** 33/19 36/13
**8:40 [1]** 3/2
**8thth [1]** 35/24

**9**

**90012 [1]** 2/11
**90067 [1]** 2/16
**90071 [1]** 2/6
**94607 [1]** 2/17
**9858 [2]** 1/19 37/12
**9th [4]** 6/5 32/25 33/11
33/12

**A**

**A.M [1]** 3/2
**able [2]** 11/19 15/2
**about [21]**
**above [2]** 8/2 37/7
**above-entitled [1]** 37/7
**absolutely [1]** 27/8
**Academie [1]** 9/16
**Accepted [1]** 22/17
**access [2]** 26/22 30/1
**account [1]** 20/8
**Accounting [1]** 22/18
**acquire [1]** 22/24
**action [4]** 24/6 28/14 28/14
28/20
**actions [1]** 28/24
**activities [1]** 22/1
**actual [1]** 10/14
**actually [4]** 6/14 19/1 19/10
20/23
**addition [1]** 33/20
**address [2]** 31/23 36/7
**addressed [1]** 3/23
**addressing [1]** 4/6
**admissible [1]** 18/8
**admitted [3]** 22/13 22/19
22/22
**affirmative [1]** 9/4
**after [10]** 8/21 9/4 12/12
13/4 13/12 13/13 15/11 15/13
15/19 28/8
**again [30]**
**against [4]** 9/2 10/2 24/10
28/15
**agent [1]** 30/4
**agree [4]** 4/19 11/25 14/14
27/10
**agreement [4]** 19/10 24/4
27/13 27/13
**all [24]**
**alleged [3]** 13/13 15/19
16/12
**allow [2]** 30/21 35/16
**allowed [1]** 20/24
**already [5]** 13/17 16/3 24/6
28/2 31/10
**also [13]** 4/10 6/8 6/18 8/24
20/1 24/7 33/20 33/25 34/5
34/22 35/10 35/14 35/20
**although [4]** 9/9 20/20 22/21
23/13
**am [12]** 5/14 5/14 13/3 14/8
16/6 17/7 17/24 24/11 33/2
33/20 35/6 35/10
**amended [1]** 6/11
**amending [1]** 35/9
**AMIR [2]** 2/10 3/13
**amount [8]** 12/1 12/4 13/2
20/1 20/22 21/24 22/7 22/8
**amounts [4]** 10/3 11/14 11/14
11/14
**and/or [1]** 30/4
**ANGELES [5]** 1/14 1/20 2/6
2/11 3/1
**another [1]** 29/3
**answer [3]** 21/25 22/11 22/17
**any [19]**
**anybody [1]** 36/4
**anyone [2]** 9/19 17/18

**anything [3]** 8/7 17/19 36/9
**anyway [2]** 4/7 15/5
**apparently [1]** 17/15
**appear [1]** 17/14
**APPEARANCES [1]** 2/1
**appearing [1]** 3/12
**appropriated [1]** 24/20
**are [101]**
**area [1]** 33/22
**argue [6]** 9/10 19/9 21/14
22/22 27/12 30/16
**argued [4]** 3/25 9/7 16/3
27/11
**arguin [1]** 31/6
**arguing [9]** 6/18 13/16 19/7
20/11 20/11 20/14 20/16
20/20 21/5
**argument [17]** 10/1 14/1 14/9
16/13 18/4 18/6 18/7 24/3
25/15 27/15 27/16 27/19
27/21 28/1 28/3 28/4 30/17
**arguments [3]** 3/24 13/10
21/13
**around [1]** 3/24
**as [37]**
**ask [11]** 4/1 4/9 5/6 6/23
8/15 8/18 10/5 10/17 11/2
14/3 18/15
**asking [1]** 30/21
**aspects [1]** 18/20
**assert [1]** 6/17
**asserting [1]** 6/25
**Asset [3]** 1/9 3/7 10/22
**Athena [1]** 7/10
**attempt [2]** 6/14 14/9
**attempted [1]** 9/9
**attempting [1]** 13/4
**attorneys [3]** 6/20 19/9
22/21
**attributable [2]** 11/11 11/16
**August [4]** 6/9 32/25 33/15
34/20
**availability [1]** 36/7
**Avenue [1]** 2/6
**awardable [1]** 10/2
**aware [1]** 12/17

**B**

**back [10]** 4/25 7/22 9/6
10/13 11/21 23/14 26/19
29/11 32/14 36/12
**Baker [1]** 32/9
**Bargely [1]** 32/11
**barn [1]** 28/8
**barring [1]** 23/7
**based [4]** 15/10 15/21 16/2
29/16
**basis [4]** 15/19 23/7 29/11
32/14
**be [53]**
**because [35]**
**become [1]** 26/24
**becomes [1]** 35/24
**been [5]** 3/23 17/3 24/6
25/16 27/15
**before [4]** 4/8 17/9 20/4
33/11
**behalf [2]** 3/12 3/16
**being [3]** 5/10 29/20 29/20
**believe [3]** 4/5 4/16 4/21
**bell [1]** 15/2
**between [2]** 10/21 22/7
**bifurcated [1]** 33/8
**bit [2]** 4/11 23/13
**blame [4]** 29/2 29/4 29/22
30/5
**blaming [1]** 30/6
**blunt [1]** 32/1
**borders [1]** 21/14

## B

**back [7]** 9/2 12/17 12/17
19/8 22/3 29/19 33/16
**box [1]** 35/22
**breach [1]** 27/5
**breached [1]** 27/8
**breath [1]** 33/5
**brief [2]** 21/20 32/12
**briefing [1]** 33/15
**briefly [4]** 11/15 14/25 19/5
19/13
**briefs [1]** 33/24
**broader [1]** 24/17
**brought [2]** 28/14 28/19
**burden [3]** 13/2 13/2 15/4
**burner [1]** 23/14
**BURTT [4]** 2/15 3/16 7/2
31/11
**business [6]** 11/1 11/1 11/17
22/4 26/24 27/1

## C

**CA [3]** 2/6 2/11 2/17
**calculated [1]** 22/6
**calculates [1]** 22/16
**CALIFORNIA [4]** 1/2 1/14 1/20
3/1
**call [1]** 3/6
**called [1]** 10/22
**CAM [4]** 10/22 11/1 16/2
19/22
**CAM's [2]** 18/4 18/5
**came [1]** 21/7
**can [26]**
**can't [8]** 13/11 13/12 13/24
14/9 14/19 29/18 30/5 33/3
**capital [3]** 1/6 22/3 24/19
**Cardel [1]** 7/13
**carefully [1]** 32/18
**Carrington [1]** 7/13
**case [21]**
**cases [2]** 7/8 29/10
**cash [3]** 18/4 18/25 19/1
**Casualty [1]** 32/10
**cause [4]** 8/22 11/24 16/12
35/14
**cent [2]** 20/17 20/21
**Center [1]** 4/4
**CENTRAL [1]** 1/2
**Century [1]** 2/10
**certain [3]** 15/9 23/3 26/2
**CERTIFICATE [1]** 37/1
**certify [1]** 37/4
**cessation [1]** 15/19
**cetera [1]** 11/11
**chair [3]** 28/22 28/24 29/5
**challenges [1]** 35/14
**chances [1]** 5/19
**Charles [1]** 7/13
**Charter [7]** 1/6 1/9 3/6 3/7
3/15 10/22 24/19
**chief [3]** 14/5 15/12 21/21
**Circuit [2]** 21/10 21/14
**circumstance [1]** 12/13
**citation [2]** 23/18 23/19
**citations [1]** 29/8
**cited [1]** 29/12
**civil [1]** 28/1
**claim [6]** 13/11 13/12 24/10
24/14 24/16 28/15
**claiming [1]** 10/12
**claims [8]** 24/5 26/13 26/14
27/2 29/13 29/14 30/9 32/14
**clarification [1]** 30/24
**clarify [2]** 13/19 30/20
**classic [1]** 28/22
**clean [1]** 18/2
**clear [1]** 26/13

**clearly [3]** 15/2 15/14 18/8
**closed [1]** 35/3
**closed [1]** 28/22
**CMC [1]** 19/20
**Code [1]** 37/5
**colleague [1]** 3/13
**colleagues [1]** 3/10
**come [4]** 4/25 25/14 27/25
28/7
**Company [1]** 32/10
**complicated [4]** 18/19 18/24
19/3 21/9
**concept [4]** 4/7 25/3 32/5
32/9
**concern [2]** 15/1 30/10
**concerned [1]** 30/19
**concluded [1]** 36/14
**conclusion [2]** 16/5 16/6
**conference [4]** 3/18 31/21
34/12 37/9
**confidential [6]** 24/19 24/21
25/6 25/15 26/17 26/23
**confidentiality [8]** 24/4
24/22 24/25 25/9 26/5 27/6
27/7 27/13
**confirmed [2]** 8/3 8/4
**conformance [1]** 37/8
**confused [3]** 5/13 5/14 5/15
**confusing [1]** 4/11
**confusion [1]** 5/24
**consequence [1]** 28/24
**consider [3]** 21/24 23/9 35/9
**considering [2]** 8/12 35/17
**considers [1]** 18/25
**constitute [1]** 19/2
**constitutes [2]** 18/17 21/21
**context [4]** 8/25 21/13 29/10
33/24
**Continental [1]** 32/10
**continuation [1]** 31/20
**continue [2]** 32/24 33/14
**continued [1]** 14/24
**contributory [1]** 30/8
**conversely [1]** 16/20
**copied [1]** 27/14
**copying [1]** 35/6
**copyright [27]**
**copyrightable [1]** 25/6
**copyrighted [6]** 8/4 8/5
16/12 25/10 26/20 27/18
**copyrights [1]** 21/15
**corporate [1]** 12/4
**corporation [2]** 12/23 12/24
**correct [2]** 9/24 37/5
**cost [5]** 19/12 20/25 20/25
22/24 35/6
**could [5]** 7/2 7/9 12/9 14/22
15/18
**couldn't [1]** 29/15
**counsel [5]** 2/1 3/22 4/1
6/19 35/11
**counter [3]** 6/16 18/9 18/10
**course [2]** 14/22 28/8
**court [12]** 1/1 1/19 8/22
16/3 23/11 29/8 29/14 29/15
29/15 30/11 32/19 35/17
**court's [1]** 30/10
**courts [1]** 29/9
**covered [1]** 27/13
**crazy [1]** 34/24
**created [1]** 7/14
**creature [1]** 29/5
**credibility [2]** 26/16 27/1
**cross [1]** 24/10
**cross-claim [1]** 24/10
**CRR [1]** 37/12
**CSC [12]** 20/1 20/6 21/18
21/19 21/24 22/7 22/8 22/13
22/16 22/19 22/21 22/22

**CSC's [3]** 21/20 23/2 23/20
23/23
**curiosity [1]** 5/6
**cut [1]** 15/16
**cutoff [1]** 6/13
**CV [1]** 1/8

## D

**damage [1]** 15/3
**damages [16]** 10/2 10/6 10/15
11/7 12/21 13/10 13/12 13/13
15/9 15/11 16/14 21/9 21/15
32/14 33/22 33/24
**dandy [1]** 35/4
**Date [1]** 37/10
**Daubert [3]** 18/14 18/15
18/17
**DAVID [2]** 2/15 3/16
**day [1]** 4/25
**days [1]** 7/14
**decide [3]** 15/21 18/10 20/4
**decided [1]** 9/3
**deductible [2]** 21/1 21/4
**defendant [21]**
**defendant's [6]** 5/5 6/6 9/25
10/9 10/10 29/5
**defendants [39]**
**defense [20]**
**defenses [2]** 7/7 7/8
**define [2]** 19/20 20/6
**defines [1]** 20/1
**defining [4]** 19/19 19/23
19/25 21/17
**definition [4]** 19/7 23/20
25/4 27/19
**definitions [1]** 19/17
**demonstrate [1]** 14/23
**denied [1]** 13/21
**deny [5]** 12/20 13/7 14/21
18/23 19/4
**depending [1]** 30/16
**deposition [5]** 6/19 7/12
7/25 19/14 21/20
**despite [1]** 19/9
**determinations [1]** 29/16
**developed [1]** 7/16
**develops [1]** 30/12
**did [11]** 4/1 4/21 6/10 7/17
8/1 8/11 10/7 10/12 17/15
28/16 34/16
**didn't [13]** 4/23 6/13 7/6
7/20 9/21 10/6 17/8 17/14
18/15 20/15 29/10 29/11 31/7
**difference [3]** 22/6 25/18
28/19
**different [3]** 14/11 28/10
29/10
**differs [1]** 31/25
**dire [1]** 34/16
**direct [1]** 11/3
**directed [1]** 14/4
**directly [1]** 13/6
**discovery [3]** 6/9 6/13 7/4
**discussed [1]** 32/7
**discussing [1]** 22/21
**discussions [1]** 31/9
**dismissed [6]** 24/6 24/9
28/20 29/13 29/16 29/20
**dispute [4]** 23/23 13/24
14/19 34/6
**disputed [1]** 16/22
**district [4]** 1/1 1/2 1/4
22/9
**DIVISION [1]** 1/2
**do [26]**
**doable [1]** 34/23
**document [7]** 7/14 25/21 26/9
26/20 31/16 34/10 34/13
**documents [6]** 10/11 24/19

## D

**documents [4]**  26/17 26/20 26/20 35/2
**does [6]**  17/18 21/24 25/18 28/19 32/13 36/4
**doesn't [4]**  24/22 27/16 27/25 29/25
**doing [2]**  14/10 14/13
**dollar [1]**  20/1
**dollars [1]**  21/7
**domain [3]**  27/15 27/17 27/18
**don't [49]**
**done [4]**  29/7 33/9 35/14 35/15
**door [8]**  20/23 21/7 28/6 28/8 30/15 30/16 30/18
**down [2]**  3/19 15/11
**drink [2]**  17/11 17/17
**dropped [2]**  8/20 28/15
**during [1]**  7/12
**dust [1]**  9/20

## E

**each [4]**  10/4 35/11 35/12 35/18
**earlier [2]**  32/15 32/15
**earn [1]**  22/1
**East [1]**  2/10
**Edition [1]**  4/3
**effect [1]**  11/12
**eight [3]**  35/12 35/21 35/22
**eight jurors [1]**  35/12
**either [10]**  11/3 11/7 13/5 21/12 22/9 25/7 25/7 25/19 29/1 34/3
**elements [2]**  7/15 11/10
**eloquent [1]**  17/11
**else [2]**  17/18 36/9
**embodied [1]**  32/5
**employee [2]**  20/2 30/4
**empty [3]**  28/22 28/24 29/5
**end [3]**  14/15 14/20 16/25
**ending [1]**  14/4
**enough [3]**  14/2 14/3 14/6
**entities [6]**  10/21 10/22 11/17 12/9 12/9 12/12
**entitled [3]**  11/7 21/18 37/7
**entity [5]**  10/19 11/21 11/23 11/24 22/10
**essentially [2]**  19/6 22/6
**establish [3]**  20/25 21/3 21/3
**estate [1]**  22/3
**estimates [1]**  34/1
**estopped [1]**  6/6
**et [1]**  11/11
**even [7]**  7/6 8/19 9/9 12/5 16/13 28/2 28/11
**ever [1]**  5/11
**every [3]**  20/17 20/21 29/12
**everybody's [1]**  28/4
**everything [1]**  29/23
**evidence [28]**
**exact [1]**  8/17
**exactly [2]**  11/11 20/13
**example [2]**  14/13 26/8
**except [2]**  26/2 31/4
**excerpt [2]**  19/13 21/20
**exchanges [1]**  19/2
**exclude [4]**  5/3 5/4 6/3 9/15
**excuse [2]**  9/5 9/6
**exercise [3]**  35/17 35/20 35/23
**exercising [1]**  35/21
**exhibit [2]**  34/23 35/9
**exhibits [3]**  34/24 35/3 35/7
**expect [1]**  34/3
**expense [1]**  21/1

**expenses [7]**  18/18 20/2 20/2 20/3 20/4 20/22 20/23
**experience [1]**  28/1 34/25
**expert [2]**  18/21 18/21
**expose [1]**  26/11
**exposure [1]**  25/5
**expression [4]**  25/5 25/6 25/25 26/6
**extent [2]**  30/24 32/13

## F

**face [7]**  19/11 19/21 20/7 22/14 22/23 22/25 28/23
**fact [11]**  6/8 6/12 13/23 13/24 14/23 15/11 24/18 26/14 28/13 29/24 30/22
**factors [1]**  8/6
**facts [6]**  6/21 14/17 14/18 16/22 34/5 34/7
**factually [1]**  7/16
**failed [1]**  10/3
**failure [2]**  14/23 17/4
**fair [17]**  5/5 6/3 6/12 6/17 6/22 6/25 7/9 7/19 7/21 7/22 8/8 8/11 8/19 8/20 8/25 9/7 9/11
**far [3]**  9/10 16/19 17/5
**farfetched [1]**  16/18
**February [1]**  6/5
**February 9th [1]**  6/5
**Federal [1]**  4/4
**fee [1]**  22/2
**feel [1]**  16/7
**fifth [1]**  24/2
**figured [1]**  4/24
**file [3]**  6/10 34/21 34/22
**filed [2]**  9/17 31/4
**filing [1]**  34/12
**filings [3]**  33/16 33/17
**finally [1]**  7/5
**financial [2]**  21/21 23/2
**financials [1]**  21/23
**financing [1]**  27/12
**find [2]**  9/5 17/3
**fine [2]**  35/4 36/9
**finished [1]**  33/6
**firm [1]**  8/9
**first [7]**  4/9 5/20 5/21 6/2 24/20 26/16 35/22
**five [1]**  35/2
**flown [1]**  9/10
**flows [1]**  11/21
**fly [1]**  17/6
**focus [1]**  33/21
**forego [1]**  17/21
**foregoing [1]**  37/5
**form [12]**  13/11 13/14 14/12 14/13 14/14 15/15 15/19 15/20 22/1 32/4 32/5 32/6
**format [1]**  37/8
**forms [5]**  11/18 13/14 26/22 26/23 26/25
**forth [1]**  25/16
**forward [2]**  5/11 26/25
**four [3]**  34/9 35/11 35/13
**four peremptories [2]**  35/11 35/13
**four things [1]**  34/9
**fourth [1]**  4/22
**frankly [4]**  9/9 18/16 18/24 26/15
**frequently [1]**  28/23
**Friday [2]**  33/9 34/3
**front [4]**  14/18 14/18 16/23 35/15
**Fund [1]**  1/9
**further [1]**  9/1

## G

**GAAP [1]**  17/4
**gain [1]**  22/2
**game [1]**  9/6
**gasp [1]**  23/3
**gave [1]**  9/13
**Generally [1]**  22/17
**generated [2]**  10/19 10/25
**generic [1]**  29/9
**GEORGE [1]**  1/3
**GERALD [2]**  2/9 3/11
**get [10]**  4/8 11/3 15/4 17/17 20/15 20/21 21/4 28/3 28/3 33/12
**gets [3]**  27/1 32/14 35/12
**getting [1]**  17/10
**give [6]**  6/14 8/23 23/17 34/6 34/16 34/19
**given [5]**  11/18 12/3 18/16 31/24 34/1
**giving [2]**  17/19 35/11
**go [11]**  12/12 13/4 14/10 15/6 16/19 17/20 29/11 33/22 34/3 35/25 35/25
**goes [3]**  5/11 5/20 26/15
**going [34]**
**Good [1]**  3/8
**got [1]**  13/5
**governed [1]**  23/3
**Grand [1]**  2/6
**grant [7]**  9/19 14/6 14/7 15/15 16/6 28/5 30/14
**grants [1]**  9/20
**gross [9]**  18/4 18/25 19/18 19/19 19/20 21/3 21/19 23/6 23/9
**guess [8]**  4/2 4/12 11/10 13/20 15/1 24/9 28/21 30/9
**guys [13]**  3/19 5/7 5/7 5/8 18/21 32/24 33/18 33/23 33/25 34/6 34/16 35/1 35/8
**GW [1]**  1/8

## H

**had [11]**  4/10 4/13 7/5 7/19 7/24 19/22 26/22 29/15 31/10 34/9 35/1
**handed [2]**  3/21 32/8
**handout [2]**  9/13 31/23
**happens [1]**  28/9
**has [15]**  3/23 5/3 9/20 10/24 11/5 11/13 17/3 22/13 22/19 22/22 23/4 23/11 25/16 27/8 27/15
**have [67]**
**haven't [3]**  14/5 17/1 31/5
**having [1]**  5/16
**he [10]**  7/17 8/1 8/3 8/4 17/19 24/20 26/16 26/17 26/23 26/23
**head [5]**  3/24 3/25 7/10 8/2 19/6
**hear [3]**  25/13 25/14 27/3
**heard [1]**  14/25
**hearing [5]**  9/1 18/14 18/15 18/17 36/8
**heart [1]**  27/1
**held [1]**  37/6
**helpful [1]**  25/19
**her [1]**  36/3
**here [17]**  3/18 3/22 9/8 10/8 10/16 16/8 19/7 19/8 21/17 23/4 27/5 28/21 29/5 30/10 30/21 31/10 33/3
**hereby [1]**  37/4
**highlighted [1]**  7/3
**him [1]**  36/3
**his [1]**  26/24

**H**

**history [1]** 7/3
**hit [1]** 19/6
**Honor [37]**
**HONORABLE [1]** 1/3
**hopefully [2]** 33/6 33/10
**horrible [1]** 33/4
**horse [1]** 28/8
**hours [1]** 5/21
**how [23]**
**however [5]** 3/21 6/12 15/18
 16/25 34/24

**I**

**I'm [1]** 29/14
**identity [1]** 32/21
**Im [5]** 10/23 24/3 24/14
 24/20 26/22
**Im's [2]** 9/16 26/15
**impact [1]** 8/4
**inapposite [3]** 24/25 25/2
 25/3
**Inc [1]** 1/6
**inclination [1]** 12/19
**included [1]** 28/14
**income [4]** 18/5 19/24 22/2
 22/3
**incorrect [2]** 12/12 12/14
**independent [1]** 27/2
**indirect [1]** 11/4
**indirectly [1]** 13/6
**individual [5]** 10/2 10/4
 10/24 11/14 13/4
**individuals [6]** 11/16 11/24
 11/25 12/12 12/24 12/25
**information [8]** 10/10 10/13
 11/18 11/22 20/3 25/10 26/5
 26/11
**infringed [1]** 27/9
**infringement [4]** 11/8 16/9
 25/20 30/9
**infringer's [2]** 10/8 10/15
**infringers [1]** 11/3 11/4
 11/4
**infringing [3]** 13/14 13/15
 16/12
**initial [1]** 13/2
**initially [2]** 24/8 28/14
**instructions [6]** 15/8 15/8
 15/22 21/9 21/11 21/15
**intake [3]** 18/4 18/25 20/22
**intend [1]** 27/12
**interest [1]** 22/1
**Interrogatory [1]** 6/11
**interrupt [2]** 17/7 17/9
**intertwined [1]** 32/20
**introduction [1]** 30/22
**invested [1]** 16/16
**investment [5]** 16/2 16/10
 16/11 16/13 16/14
**investors [1]** 16/15
**involved [1]** 8/13
**involvement [1]** 9/16
**irrelevant [1]** 27/24
**is [204]**
**isn't [3]** 22/6 27/5 31/4
**issue [24]**
**issued [1]** 29/9
**issues [4]** 4/6 13/23 13/24
 32/19
**it [104]**
**items [1]** 18/8
**its [6]** 6/21 18/5 24/9
**itself [5]** 11/8 21/19 22/13
 22/22 25/21

**J**

**JAMES [2]** 2/5 3/10

**JAMIE [2]** 2/5 3/10
**joinder [2]** 31/7 31/8 31/12
 31/14
**joined [1]** 4/15
**jolted [1]** 7/18
**JUDGE [1]** 1/4
**judgment [5]** 13/17 13/18
 13/22 16/4 16/21
**Judicial [2]** 4/2 37/9
**JULY [3]** 1/15 3/1 37/10
**juror [5]** 35/23 35/24 35/25
 35/25 36/2
**jurors [4]** 34/25 35/2 35/12
 35/22
**jury [21]**
**just [23]**
**justify [1]** 15/13

**K**

**KATIE [2]** 1/19 37/12
**keep [2]** 35/8 35/19
**kept [1]** 26/4
**key [1]** 7/15
**kick [2]** 17/4 36/3
**kind [6]** 3/24 18/14 23/10
 25/10 25/23 31/9
**Kirton [25]**
**knew [5]** 7/22 8/10 8/20
 24/20 26/17
**know [22]**
**knows [1]** 28/6

**L**

**large [1]** 26/15
**last [1]** 5/17
**late [1]** 9/6
**later [3]** 4/25 28/15 36/3
**LATHAM [2]** 2/4 3/9
**laugh [1]** 27/20
**Laughter [1]** 17/13
**Laws [1]** 4/3
**lawsuit [1]** 8/13
**lawyer [1]** 7/13
**learned [1]** 6/20
**least [1]** 5/21
**leave [1]** 18/10
**left [1]** 4/11
**legal [2]** 2/15 26/14
**length [1]** 33/25
**lengthy [1]** 8/13
**less [2]** 22/11 22/18
**let [16]** 3/6 4/1 4/8 5/1 5/6
 6/23 7/6 10/5 10/17 11/2
 17/16 17/25 19/15 26/19 27/3
 31/17
**let's [6]** 3/21 16/21 21/8
 26/13 28/11 32/24
**liability [1]** 12/8
**liable [1]** 11/25
**lightbulb [1]** 8/1
**like [11]** 3/24 7/10 19/2
 20/6 25/10 25/23 27/19 31/9
 32/7 32/9 32/10
**limine [23]**
**line [1]** 3/14
**list [4]** 34/23 34/23 35/4
 35/9
**litigants [1]** 28/23
**litigating [2]** 6/6 12/18
**litigation [2]** 14/23 28/1
**little [2]** 4/11 23/13
**LLP [1]** 2/9
**long [1]** 34/1
**longer [4]** 4/12 6/23 14/12
 30/23
**look [7]** 21/12 29/11 31/18
 31/19 34/15 35/2 35/3

**looked [1]** 31/5
**Los [2]** 2/6 2/11
**loss [2]** 20/21
**lost [2]** 13/17 32/4
**lot [3]** 25/13 28/18 34/5
**lots [1]** 25/14
**loudly [2]** 33/4 33/5

**M**

**made [1]** 23/24
**main [2]** 10/7 10/16
**majority [1]** 8/6
**make [17]** 14/9 14/19 15/15
 16/4 16/13 17/2 21/6 21/12
 24/18 25/18 27/25 28/3 28/3
 29/19 29/15 30/17 30/17
**making [3]** 13/25 24/15 27/19
**Management [2]** 1/9 10/22
**many [1]** 21/7
**mark [1]** 27/5
**market [1]** 8/5
**material [2]** 13/22 13/23
**materials [3]** 16/12 30/2
 32/8
**matter [7]** 3/6 12/15 18/16
 28/17 32/24 33/14 37/7
**may [15]** 14/2 14/25 17/7
 19/1 19/5 19/9 19/9 19/13 20/3
 20/9 20/20 21/19 23/1 23/17
 28/6 29/7
**maybe [1]** 35/2
**McConkie [4]** 24/14 29/23
 30/23 32/20
**me [28]**
**mean [6]** 11/14 12/19 16/17
 19/15 19/17 30/3
**means [4]** 10/9 19/11 22/22
 33/10
**measure [4]** 10/9 10/14 15/3
 26/15
**merges [1]** 23/10
**merits [1]** 29/16
**might [5]** 19/2 26/4 29/25
 32/17 35/8
**mind [3]** 9/13 35/8 35/19
**minus [6]** 19/12 19/21 20/2
 22/14 22/20 22/24
**misappropriated [2]** 24/4
 26/16
**missed [3]** 9/23 31/3 34/10
**missing [1]** 29/2
**MOBILITY [1]** 2/15
**MONDAY [4]** 1/15 3/1 33/9
 34/4
**money [10]** 12/16 13/5 19/22
 20/8 20/22 22/7 22/8 22/14
 32/4 35/5
**MOON [2]** 2/5 3/10
**more [9]** 22/11 22/11 23/5
 24/21 31/12 32/9 32/9 32/18
 35/1
**morning [2]** 3/8 3/11
**most [1]** 35/2
**motion [30]**
**motions [13]** 4/9 4/13 4/14
 4/16 5/2 5/3 9/21 9/22 9/25
 31/3 31/15 32/15 32/20
**move [1]** 17/9
**moved [1]** 26/25
**move [1]** 6/1
**Mr [1]** 5/16
**Mr. [9]** 5/24 7/2 10/23 10/23
 24/14 24/20 26/15 26/22
 31/11
**Mr. Burtt [2]** 7/2 31/11
**Mr. Im [4]** 10/23 24/14 24/20
 26/22
**Mr. Im's [1]** 26/15

## M

Mr. Park [1]   10/25
Mr. Sauer [1]   5/24
Ms. [1]   4/6
Ms. Sprague [1]   4/6
much [1]   23/8
my [16]   3/9 3/13 9/1 9/13
  12/19 13/7 14/20 15/24 16/5
  16/6 17/11 18/23 31/12 31/24
  33/5 34/25

## N

nail [1]   19/6
name [2]   5/17 8/9
nature [1]   8/3
nd [1]   34/20
necessary [3]   12/20 35/7
  35/8
need [3]   17/23 23/14 23/19
never [1]   3/25
new [2]   8/7 26/25
next [4]   9/14 17/9 22/15
  36/7
Ninth [2]   21/10 21/14
no [48]
No. [1]   14/21
No. 2 [1]   14/21
nobody [2]   21/5 31/6
non [1]   9/17
noon [1]   33/18
normally [3]   14/15 18/24
  26/3
North [1]   1/20
not [52]
note [1]   3/21
noted [1]   6/8
nothing [3]   9/1 23/4 27/8
noting [1]   6/16
notion [2]   24/25 25/9
novel [1]   17/5
now [5]   5/1 5/10 9/5 17/23
  31/22
numbe [1]   31/16
number [1]   15/4
numbers [3]   15/6 15/7 22/23

## O

Oakland [1]   2/17
object [1]   5/16
objection [1]   9/18
obligation [1]   26/10
obtain [3]   19/22 20/8 22/15
obtaining [2]   19/12 20/25
obviously [6]   14/11 14/21
  23/3 25/14 28/16 32/18
off [4]   15/17 27/20 36/3
  36/3
office [2]   26/9 26/10
officer [1]   21/21
Official [1]   1/19
oh [1]   8/23
okay [4]   4/18 14/3 31/16
  32/23
once [2]   23/15 35/17
one [22]
one a [1]   23/13
one and [1]   30/11
one can [1]   16/13
one considers [1]   18/25
one from [1]   35/18
one is [4]   10/1 12/19 16/5
  24/7
one joinder [2]   31/12 31/14
one motion [1]   4/21
one of [5]   4/12 5/14 31/8
  31/8 31/9
one or [1]   32/15
ones [6]   4/10 5/1 11/17 24/5

31/4 31/8
35/21
open [4]   4/11 28/6 30/14
  30/18
opened [1]   30/15
opening [1]   30/16
operational [1]   18/18
operations [1]   18/5
opportunity [2]   4/2 8/24
oppose [1]   13/16
opposed [1]   25/25
opposes [1]   18/6
opposite [1]   8/17
opposition [2]   9/17 24/16
order [3]   30/24 34/12 35/6
orders [2]   29/9 29/12
originally [1]   9/4
Orr [2]   6/19 7/13
other [18]   9/22 13/10 13/14
  17/10 19/1 20/2 20/16 22/10
  22/20 25/23 26/2 26/2 26/3
  26/6 26/20 27/24 29/18 31/2
otherwise [2]   14/12 16/16
ought [1]   30/11
our [7]   15/1 22/1 22/3 22/3
  22/18 22/18 24/16
out [11]   3/21 4/14 4/24 5/6
  9/12 17/4 17/20 28/12 28/20
  31/6 32/8
outside [2]   12/4 15/6
over [1]   33/11
overall [1]   21/13
overhead [1]   20/2
own [2]   21/20 23/20

## P

page [1]   37/7
pages [1]   34/14
paid [1]   22/9
parcel [1]   8/12
Park [2]   2/10 10/23
part [3]   8/12 21/2 28/6
particular [7]   7/20 11/6
  11/8 12/3 17/2 18/20 18/20
parties [10]   4/12 8/13 19/10
  29/13 29/14 31/22 31/23
  32/12 33/21 34/5
partner [1]   26/24
party [8]   4/12 4/13 4/24
  6/17 6/24 29/2 29/4 29/6
pass [1]   35/16
passed [1]   26/23
passes [1]   35/18
past [1]   35/25
patent [2]   14/11 32/2
Paul [2]   9/16 24/3
pause [1]   17/18
PC [1]   2/15
people [7]   25/23 26/2 26/2
  26/3 26/6 33/3 33/4
peremptories [5]   35/10 35/11
  35/13 35/15 35/20
peremptory [2]   35/17 35/23
perfectly [1]   20/24
period [4]   8/13 8/21 15/13
  16/20
person [1]   36/1
personal [1]   34/25
persons [1]   25/22
phrase [1]   11/12
phrases [1]   11/9
pierce [1]   12/9
plaintiff [10]   1/7 2/3 5/3
  9/15 9/22 10/15 13/1 16/16
  18/6 32/13
plaintiff's [4]   5/2 6/4 6/20
  16/25
plaintiffs [15]   5/7 5/11

10/3 10/5 12/2 13/12 13/16
16/13 17/16 22/2 23/10 28/25
29/6 31/25 32/1
play [1]   4/17
played [1]   31/9
point [20]
pointed [1]   9/12
portion [1]   4/3
portions [1]   26/3
position [2]   6/4 23/23
possession [1]   10/11
possibility [2]   7/21 8/10
potential [2]   8/5 35/22
pour [1]   17/8
preclude [8]   10/1 13/4 13/10
  16/1 18/3 18/7 24/3 24/8
precluding [1]   13/25
predicate [1]   6/21
pregnant [1]   17/18
prejudice [2]   7/2 28/20
prepared [1]   31/19
present [4]   18/9 23/5 26/8
  32/6
presented [3]   14/5 15/12
  20/4
PRESIDING [1]   1/4
presume [7]   4/13 9/18 10/5
  10/17 12/16 12/17 18/19
pretrial [3]   3/18 31/20
  34/11
prevent [2]   19/16 24/13
principals [1]   10/23
Principles [1]   22/18
prior [2]   4/1 7/14
probably [3]   14/14 23/16
  36/2
problem [5]   13/21 16/20
  18/12 21/16 28/22
proceedings [3]   1/13 36/14
  37/6
produced [2]   10/6 10/11
proffered [1]   17/1
proffering [1]   19/17
profit [8]   11/10 18/5 19/18
  19/25 20/1 20/17 20/18 25/25
profited [2]   11/20 11/20
profits [16]   10/8 10/9 10/16
  10/18 10/18 10/25 11/16
  12/15 12/22 13/3 16/2 18/18
  21/4 22/16 22/19 23/7
pronounce [1]   8/9
provide [1]   29/10
provided [2]   10/14 29/8
provides [2]   11/1 22/7
provision [2]   26/5 27/7
public [3]   27/14 27/17 27/18
publication [1]   3/22
pull [1]   31/17
purported [1]   9/15
purpose [1]   25/24
pursuant [2]   22/17 37/4
pursue [1]   9/3
put [11]   9/6 15/2 15/3 16/21
  19/22 20/8 21/8 21/18 22/14
  23/13 28/11

## Q

question [7]   4/10 21/23 22/5
  22/15 24/21 29/20 32/13
questions [4]   33/21 34/17
  36/4 36/10
quick [1]   31/17
quite [1]   26/15
quotes [1]   6/21

## R

raise [2]   7/5 8/24
raising [1]   9/4

**R**

**read [3]** 4/2 17/15 21/19
**real [5]** 22/3 25/7 25/8 25/9 31/17
**reality [1]** 19/8
**realizing [1]** 7/18
**really [11]** 3/23 3/25 5/13 6/13 8/25 10/12 18/14 24/22 25/8 33/3 34/6
**reason [4]** 5/12 5/14 13/21 29/24
**reasons [1]** 5/14
**receivable [10]** 19/11 19/12 19/21 19/22 20/7 20/9 22/8 22/14 22/15 22/24
**received [1]** 20/23
**receives [1]** 22/8
**recitation [1]** 17/12
**recite [1]** 10/13
**record [2]** 5/23 17/25
**recovery [1]** 15/19
**redemption [1]** 22/2
**refer [1]** 29/18
**reference [3]** 24/18 29/15 29/24
**referenced [1]** 29/21
**referencing [1]** 14/13
**referred [1]** 29/19
**reflect [1]** 17/25
**regard [6]** 9/2 16/22 17/4 18/22 30/3 30/3
**regards [1]** 8/7 23/11
**regulations [1]** 37/8
**relate [1]** 24/22
**related [5]** 5/22 11/8 15/7 24/7 24/12
**relating [1]** 4/6
**relationship [1]** 10/20
**release [1]** 26/10
**relevance [1]** 28/16
**relevant [1]** 28/17
**reported [1]** 37/6
**Reporter [1]** 1/19
**REPORTER'S [1]** 1/13
**representing [2]** 5/7 5/8
**request [1]** 14/7
**require [1]** 18/21
**requires [1]** 21/6
**reraised [1]** 14/22
**reserve [3]** 12/13 24/1 30/11 23/16
**resolve [4]** 4/1 23/14 23/15 23/16
**resolved [1]** 16/23
**respect [1]** 7/3
**respond [3]** 6/14 13/18 32/18
**response [4]** 6/11 7/15 16/5 33/17
**result [2]** 13/6 19/23
**revenue [27]**
**revenues [2]** 18/25 22/18
**review [1]** 32/18
**revive [2]** 6/12 6/15
**rid [1]** 33/12
**right [13]** 3/14 6/2 9/14 10/20 18/3 24/1 27/5 28/5 31/2 31/18 34/15 34/16 36/4
**RPR [1]** 37/12
**rude [2]** 17/14 17/16
**ruled [3]** 16/3 30/13 30/14
**rules [1]** 23/3
**ruling [9]** 9/1 13/17 14/20 14/20 15/24 18/23 23/24 30/11 30/21
**run [2]** 10/23 28/8
**running [1]** 11/1
**RUSSELL [2]** 2/4 3/8

**S**

**said [4]** 13/10 14/16 29/15 30/13
**same [4]** 24/6 26/5 16/6 30/13
**sandbagging [1]** 35/16
**SAUER [7]** 2/4 2/9 2/9 3/9 3/11 5/16 5/24
**saw [2]** 6/1 31/7
**say [10]** 7/17 8/1 8/22 11/19 13/5 14/9 23/6 30/18 33/3 33/4
**saying [2]** 21/5 29/18
**scheme [3]** 20/19 21/2 23/4
**school [6]** 1/6 3/7 3/15 22/9 22/9 24/19
**scope [2]** 23/12 30/20
**seat [3]** 35/23 35/24
**seats [1]** 5/9
**second [2]** 4/3 4/25
**secret [3]** 25/8 26/1 26/4
**secrets [2]** 24/5 24/15
**Section [1]** 37/4
**see [9]** 9/21 15/5 25/19 30/12 30/15 31/7 32/24 33/18 36/12
**seeking [5]** 6/11 10/8 10/9 10/14 10/15
**seeks [1]** 9/5
**seemingly [1]** 18/14
**seems [4]** 14/14 16/18 18/13 32/6
**Selden [1]** 32/9
**selected [1]** 35/19
**sense [1]** 20/15
**separate [2]** 27/2 34/12
**September [2]** 6/10 6/13
**September 16th [1]** 6/13
**series [1]** 29/8
**serious [1]** 34/24
**set [2]** 6/13 34/7
**settled [2]** 9/20 29/3
**seven [1]** 7/14
**shams [1]** 12/9
**shift [1]** 15/4
**should [6]** 8/22 8/23 22/23 25/22 34/6 34/21
**show [4]** 12/3 21/7 27/17 32/3
**showing [4]** 13/2 21/6 23/8 25/22
**shown [2]** 15/14 26/6
**side [7]** 5/11 5/12 21/12 25/19 35/11 35/12 35/18
**sidebar [1]** 35/15
**sides [5]** 12/17 12/17 19/8 29/19 33/16
**similar [1]** 32/22
**simultaneous [2]** 33/16 33/17
**since [3]** 6/23 28/10 31/5
**single [1]** 29/12
**sit [4]** 3/19 5/10 5/22 15/11
**situation [3]** 18/20 32/7 32/11
**so [58]**
**solely [2]** 10/10 20/7
**some [11]** 3/24 4/13 14/22 17/8 18/14 26/4 32/15 32/19 32/20 33/10 33/21
**somehow [1]** 7/23
**something [6]** 11/12 13/20 19/2 21/10 26/1 28/7
**somewhat [3]** 14/19 16/18 34/23
**soon [1]** 26/24
**soon-to-become [1]** 26/24
**sorry [3]** 12/2 13/12 29/14
**sort [6]** 17/5 18/18 19/3 25/16 26/4 28/22

**South [1]** 2/6
**space [1]** 3/25
**speak [1]** 31/11
**specifically [2]** 6/4 32/10
**specification [1]** 11/5
**specifics [1]** 11/6
**specify [1]** 10/3
**spill [1]** 18/1
**SPRAGUE [3]** 2/5 3/10 4/6
**spread [3]** 21/25 22/5 22/6
**Spring [1]** 1/20
**springs [1]** 7/10
**stage [2]** 14/18 33/9
**stand [1]** 5/24
**standard [3]** 7/7 19/17 32/21
**start [3]** 5/2 32/25 34/2
**started [1]** 13/14
**starting [3]** 32/8 33/2 33/12
**statement [2]** 11/13 23/2
**STATES [4]** 1/1 1/4 37/5 37/9
**statute [3]** 11/9 21/1 21/6
**statutory [2]** 20/19 23/4
**stenographically [1]** 37/6
**step [1]** 26/19
**still [4]** 4/11 4/16 4/17 13/23
**stipulated [1]** 34/7
**stop [4]** 7/6 17/11 17/16 19/15
**stopped [2]** 13/13 15/14
**Street [2]** 1/20 2/16
**stretch [1]** 17/20
**stuff [3]** 3/20 14/6 28/18
**stupid [3]** 27/16 27/21 28/1
**subject [2]** 25/21 28/17
**submitted [1]** 34/8
**subsequent [1]** 31/20
**substantially [1]** 32/22
**substituted [1]** 5/17
**such [1]** 7/24
**sudden [1]** 7/18
**sue [1]** 29/1
**sued [4]** 24/8 29/3 29/20 30/22
**sufficient [1]** 15/13
**suggest [1]** 30/10
**suggested [1]** 32/19
**suggesting [1]** 30/17
**suggestion [1]** 24/14
**suit [1]** 30/23
**Suite [2]** 2/11 2/16
**summary [5]** 13/17 13/18 13/22 16/4 16/21
**supplemental [3]** 7/15 33/15 33/23
**support [2]** 5/4 17/1
**supposed [2]** 17/11 32/25
**supposedly [2]** 12/21 30/2
**sure [1]** 24/11
**Sutcliffe [1]** 7/13

**T**

**tail [1]** 7/4
**take [5]** 20/17 20/23 22/1 31/18 34/15
**taking [1]** 20/7
**talk [2]** 3/19 7/2
**talking [6]** 12/6 16/8 24/24 26/13 26/14 26/21
**talks [1]** 3/22
**tell [8]** 15/8 27/20 32/23 33/7 33/8 34/25 35/4 36/1
**temporarily [1]** 23/14
**ten [1]** 35/2
**ten documents [1]** 35/2
**tend [1]** 27/10
**termination [1]** 9/16
**terms [3]** 26/22 32/21 35/10
**testifying [1]** 23/2

**testimony [2]** 28/25 36/22
**than [7]** 13/10 14/11 23/5
26/20 28/2 31/12 35/1
**Thank [4]** 15/23 23/25 31/1
36/10
**that [266]**
**That's [2]** 9/24 12/16
**their [12]** 10/25 10/25 14/5
15/11 20/21 26/25 29/7 30/4
30/4 30/4 31/14 32/14
**them [20]**
**theme [1]** 25/16
**themselves [2]** 19/20 30/6
**then [26]**
**theory [3]** 16/19 17/2 17/4
**there [43]**
**thereafter [1]** 24/9
**therefore [5]** 9/7 9/18 9/19
14/19 32/3
**these [13]** 7/7 7/20 8/11
8/23 16/15 21/11 21/11 26/16
26/19 32/19 33/21 34/1 34/5
**they [92]**
**THIBODEAUX [2]** 1/19 37/12
**things [5]** 15/9 18/18 18/25
19/1 34/9
**think [30]**
**third [2]** 6/17 29/6
**third-party [1]** 29/6
**thirsty [1]** 17/24
**this [65]**
**those [17]** 4/14 4/15 4/23
9/21 10/11 10/22 11/25 22/20
24/5 26/3 26/25 29/11 31/5
31/19 33/4 33/17 34/21
**thought [3]** 19/15 31/5 31/12
**threat [1]** 15/17
**three [3]** 10/21 34/9 34/14
**three defendant [1]** 10/21
**three or [1]** 34/9
**three pages [1]** 34/14
**through [1]** 28/8
**throughout [1]** 25/17
**tie [1]** 18/2
**time [23]**
**Title [1]** 37/4
**today [1]** 3/12
**told [4]** 25/15 25/22 33/7
33/8
**tomorrow [1]** 33/2
**too [1]** 34/1
**took [2]** 23/8 26/23
**TORKAMANI [2]** 2/10 3/13
**total [1]** 18/4
**traced [1]** 12/22
**tracing [1]** 12/15
**trade [5]** 24/5 24/15 25/8
26/1 26/4
**traditionally [1]** 28/23
**trailing [1]** 33/12
**transcript [3]** 1/13 37/6
37/7
**trial [11]** 4/1 5/20 6/7 6/17
20/24 23/6 27/12 32/25 33/2
33/25 34/2
**trials [1]** 35/1
**true [2]** 15/11 37/5
**try [1]** 33/20
**trying [1]** 19/16
**Tuesday [1]** 34/3
**Twins [1]** 6/1
**two [63]** 5/21 10/23 10/24
21/2 32/15 35/18
**two hours [1]** 5/21
**two individual [1]** 10/24
**two of [1]** 32/15
**two part [1]** 21/2

**two passes [1]** 35/18
**two-minute [1]** 35/18
**types [2]** 28/7/8

U

**U.S [1]** 1/19
**under [4]** 21/1 21/2 26/4
26/22
**underlying [2]** 6/22 23/11
**underneath [1]** 33/5
**understand [24]**
**understanding [2]** 31/13
31/24
**understood [2]** 24/12 26/12
**UNITED [4]** 1/1 1/4 37/5 37/9
**unknown [1]** 7/23
**unless [4]** 12/1 12/2 16/11
34/10
**unring [1]** 15/1
**until [3]** 6/19 7/24 33/12
**up [9]** 5/24 15/20 18/2 18/10
19/22 20/8 21/18 22/15 31/17
**upfront [2]** 20/25 22/7
**upset [1]** 36/2
**us [5]** 10/14 15/4 19/9 21/6
23/8
**use [24]**
**used [1]** 26/25
**using [5]** 11/17 13/13 13/14
14/12 15/15
**utilizes [1]** 16/11

V

**valid [1]** 9/6
**value [7]** 8/5 9/11 19/21
20/7 22/14 22/24 22/25
**variety [1]** 29/9
**various [2]** 7/7 7/8
**verdict [1]** 14/4
**versus [2]** 3/7 32/10
**very [3]** 7/4 19/13 21/20
**vicarious [1]** 30/8
**view [1]** 26/3
**Vince [1]** 9/17
**violate [1]** 11/24
**violated [3]** 24/3 24/15 30/2
**violation [5]** 13/6 14/15
14/24 16/11 16/17
**violations [1]** 11/3
**virtual [1]** 32/21
**vis [2]** 25/10 25/10
**vis-a-vis [1]** 25/10
**voir [1]** 34/16
**voluntarily [1]** 9/3

W

**wackier [1]** 28/2
**WAGNER [1]** 2/9
**want [21]**
**wanted [1]** 24/13
**wants [2]** 29/2 29/4
**was [38]**
**Washington [1]** 2/16
**wasn't [2]** 25/15 34/11
**waste [2]** 28/4 35/5
**water [5]** 17/8 17/11 17/17
17/21 17/23
**WATKINS [2]** 2/4 3/9
**way [15]** 7/22 11/9 11/20
11/20 15/6 16/22 19/19 19/20
19/23 19/25 20/1 21/8 28/12
30/1 30/13
**we [63]**
**weigh [1]** 23/22
**weird [1]** 25/11
**welcome [1]** 23/5
**well [23]**
**went [9]** 7/4 12/15 12/16

12/23 12/23 12/23 12/24
**were [24]**
**WESTERN [1]** 1/2
**what [51]**
**whatever [4]** 14/13 20/3
21/12 30/5
**when [8]** 7/21 9/20 15/14
22/8 24/20 26/16 33/23 35/20
**whenever [1]** 33/12
**where [7]** 7/15 12/15 12/16
13/3 21/2 26/1 28/7
**wherever [1]** 12/22
**whether [4]** 24/17 27/7 27/8
32/21
**which [13]** 4/10 4/12 4/21
7/14 10/8 10/10 15/9 22/1
23/2 25/21 32/8 32/14 33/10
**who [7]** 3/22 6/19 7/14 19/9
28/6 29/13 33/3
**whole [2]** 25/24 26/7
**why [20]**
**will [50]**
**withdrew [1]** 6/5
**within [1]** 10/10
**without [5]** 20/7 28/20 29/23
30/5 35/16
**witness [3]** 23/1 34/23 36/6
**wonder [1]** 5/22
**wondering [2]** 5/18 5/19
**wonders [1]** 14/9
**word [1]** 25/1
**words [4]** 17/10 20/16 27/24
29/18
**work [1]** 30/1
**working [1]** 22/3
**works [2]** 8/4 8/6
**world [1]** 26/11
**would [23]**
**wouldn't [2]** 12/1 18/16
**writing [1]** 31/23
**wrong [3]** 5/8 20/12 29/23
**WU [1]** 1/3

Y

**yeah [1]** 30/18
**yes [7]** 4/20 12/10 22/12
30/25 33/1 34/22 36/9
**yet [1]** 34/18
**you [96]**
**your [46]**

Z

**Zeus [1]** 7/11